Homer Ray LAND, Appellant,

v.

The STATE of Texas, Appellee.

Billy Mack ADAIR, Appellant,

v.

The STATE of Texas, Appellee.

Phillip Ray LAND, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 55172 and 57206–57208.

Court of Criminal Appeals of Texas,
Panel No. 1.

March 21, 1979.

Rehearings En Banc Denied
June 20, 1979.

Bill Pemberton, Joe Weis, Greenville, for appellant.

Donald A. Parks, City Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

OPINION

W. C. DAVIS, Judge.

Appeal follows trial de novo in county court on the offense of possession of channel catfish in excess of the legal limit. The trial court assessed punishment at a two hundred dollar ($200) fine in each cause. The four causes arise from the same fact situation and present identical issues for review. Thus the causes are consolidated for purposes of this opinion.

Surveillance by Texas Parks and Wildlife Department officers resulted in the arrest of appellants as they emerged from Lake Tawakoni. At the time of their arrests, appellants had in their possession 1,652 channel catfish. Prosecution of appellants proceeded under Proclamation A–3, issued by the Parks and Wildlife Department, which provides that each fish possessed in excess of the legal limit constitutes a separate offense. Secs. 1.07 and 7.02, Statewide Hunting, Fishing and Trapping Proclamation No. A–3, 1975–76.[1]

1. There is some confusion as to whether Cause No. 55,172 was prosecuted under Proclamation A–3. However, the record indicates that the maximum fine in 55,172 was $200, which exceeds the $50 maximum stated in V.T.C.A., Parks & Wildlife Code, Sec. 66.106(b). The record indicates, therefore, that all causes were prosecuted under Proclamation A–3.

Section 66.106(b) states:

"Catfish Limits
"(a) Except as provided in Subsections (b) and (c) of this section, no person may catch and retain in any one day, or place in or on any container or device used for holding fish while in the process of fishing, fish taken from public fresh water in excess of the following limitations:
\* \* \* \* \* \*

Appellants contend that Proclamation A–3 is in part unconstitutional because it is an attempt by an administrative agency to formulate penal laws. Appellants argue that the Legislature is prohibited from delegating rule-making authority to administrative agencies. *Tuttle v. Wood*, 35 S.W.2d 1061 (Tex.Civ.App.-San Antonio, 1931).

Appellants' argument on delegation raises fundamental issues of administrative and state constitutional law, which we proceed to review in the interest of justice.

In *Tuttle, supra*, the Court held that the Legislature could not delegate law-making powers which prescribed a penalty to an administrative agency. Following *Tuttle*, courts have steadily retreated from the "no delegation doctrine" to the point that rule-making and regulation by administrative agencies pursuant to specific delegated authority is permitted. *Kelly v. Industrial Accident Board*, 358 S.W.2d 874 (Tex.Civ. App.-Austin, 1962).

Approval of regulatory activities by administrative bodies was a realization by the courts of the very real problems facing legislators. Very often the areas that require regulation involve highly technical fields or areas where massive accumulation of data is necessary. Faced with limitations on funds, time, and manpower, legislators find it impossible to acquire the requisite knowledge and expertise to enable them to responsibly legislate in the area. Delegation of the rule-making authority to an agency staffed by experts with access to the required data is a realistic approach to the problem. The agency supplies the expertise to regulate the area within the guidelines established by the Legislature. Such a solution has been approved by the Texas Supreme Court:

"[T]here are many powers which the Legislature may delegate to other bodies . . . where the Legislature cannot itself practically or efficiently perform the functions required."

"(b) A person may possess at one time not more than 50 blue, channel, or yellow flathead catfish, singly or in the aggregate.

\* \* \* \* \* \*

"(d) A person who violates this section is guilty of a misdemeanor and on conviction is

*Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627 (1939), no writ history.

In the present case, delegation of rule-making authority to the Parks and Wildlife Department is both a practical and efficient method to regulate the wildlife resources of Texas.

Delegation of rule-making authority is not an unlimited grant of power. In doling out the authority to regulate and make rules, the Legislature must establish guidelines for the agency. Attorney General Opinion, No. M–1190 (1972).

The agency must carefully frame its regulations within the narrow confines established by the Legislature. A rule made outside these guidelines may be held invalid or beyond the delegated authority. *Kelly, supra*.

In promulgating rules, the agency receives guidances from two main sources. First, the plain and clear language of the Legislature defines the extent of the authority delegated. This legislative mandate establishes the guidelines within which the agency may function. Also, the agency may not suspend laws enacted by the Legislature because that authority is limited exclusively to direct action by the Legislature. Vernon's Ann.Tex.Const., Art. 1, Sec. 28. Further, in rule-making, the agency may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with statutory provisions. *Kelly, supra*.

Briefly stated, an administrative agency is controlled by the guidelines established by the Legislature and may not suspend legislative acts or increase the sanctions of statutes.[2]

■ Appellants' broad assertion that the delegation of rule-making authority is unconstitutional is without merit. However,

punishable by a fine of not less than $5 nor more than $50."

2. Therefore, the State's argument that Sec. 66.-106(b) was suspended by Proclamation A–3 is without merit.

we must examine further to determine if the portion of Proclamation A–3 at issue exceeds the delegation of authority given the Parks and Wildlife Department.

Appellants were prosecuted under Statewide Hunting, Fishing and Trapping Proclamation No. A–3 1975–76, which provides:

Sec. 1.07 "Each . . . fish taken or possessed in violation of any provision of this proclamation shall constitute a separate offense."

Sec. 7.02 "The daily bag limit on channel catfish is twenty-five in the aggregate and the possession limit is fifty (50) in the aggregate."

The complaint in each cause charges: ". . . unlawfully and willfully possess fish, namely: channel catfish, taken from the public waters of the State of Texas, to-wit: Lake Tawakoni, in excess of the possession limit of fifty (50)."

█ Clearly, Proclamation A–3 regulates both taking and possessing. The complaint charges a violation by possession over the limit. Therefore, in order for the judgments to be affirmed, the Legislature must have delegated the authority to regulate possession to the Parks and Wildlife Department. *Brown Express Inc. v. Railroad Commission,* 415 S.W.2d 394 (S.Ct.Tex. 1967); *Kelly, supra.*

Our review of the Parks and Wildlife Code reveals no delegation of authority to regulate possession of channel catfish. Rather, the authority delegated is in the area of taking:

"Sec. 61.052 General Regulatory Duty

"(a) The commission shall regulate the periods of time when it is lawful to *take* wildlife resources in the places covered by this chapter.

"(b) The commission shall regulate the means, methods, manners, and places in which it is lawful to *take* wildlife resources in the places covered by this chapter."

"Sec. 61.054 Proclamation of the Commission

"(a) Regulation of the *taking* of wildlife resources under this chapter shall be by proclamation of the commission.

"(b) A proclamation of the commission authorizing the taking of wildlife resources must specify:

"(1) the species, quantity, age or size, and, to the extent possible, the sex of the wildlife resources authorized to be *taken*;

"(2) the means or method that may be used to *take* the wildlife resources; and

"(3) the region, county, area or portion of a county where the wildlife resources may be *taken*."

"Sec. 61.901

"(a) A person who violates any provision of this chapter or any proclamation or regulation of the commission issued *under the authority of this chapter* is guilty of a misdemeanor and on conviction is punishable by a fine of not less than $25 nor more than $200. Each game animal . . . or fish *taken* in violation of this chapter or of a proclamation or regulation of the commission constitutes a separate offense."

These provisions clearly and unambiguously delegate authority to regulate the taking of channel catfish, not the possession. See *Tidwell v. State,* 547 S.W.2d 34 (Tex.Cr.App. 1977). Since we are dealing with a regulation that is penal in nature, we must strictly construe the rule-making authority. Strict construction forces us to look at the clear language of the guidelines established by the Legislature permitting regulation of taking only. That there is a distinction between taking and possession is without question. *Ex parte Blardone,* 55 Tex.Cr.R. 189, 115 S.W. 838 (1909).

We hold therefore that any regulations as to possession limits of channel catfish were beyond the authority delegated to the Parks and Wildlife Department. It follows that convictions based on unauthorized portions of Proclamation A–3 cannot stand.[3]

3. We note that the "possession" portions of Proclamation A–3 would have the effect of sus-

pending Sec. 66.106(b) and increasing penal sanctions; therefore, even if the authority to

The judgments are reversed and the prosecutions are ordered dismissed.

delegate had been given in the area of possession, Proclamation A–3, Secs. 1.07 and 7.02, would be invalid under Vernon's Ann.Tex. Const., Art. I, Sec. 28; *Kelly, supra.*