Jerry L. McDONALD, Steven D. McDonald & Dennis A. McDonald, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 66201, 66202, 66203.

Court of Criminal Appeals of Texas, Panel No. 2.

April 15, 1981.

Rehearing Denied May 20, 1981.

Rogelio F. Munoz, Uvalde, for appellants.

David R. White, Jr., County Atty., Uvalde, Robert Huttash, State's Atty., Austin, for State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Jerry L. McDonald appeals from his conviction for the offense of possession of an illegally taken deer. Appellants Steven D. and Dennis A. McDonald each appeal from respective convictions for hunting in closed season. All three appellants were convicted in Justice Court Precinct No. 2 of Uvalde County, and thereafter appealed to the Uvalde County Court. Upon *trial de novo* in that court, each was again convicted and assessed a fine of $150.00. From the county court dispositions, each appellant prosecutes an appeal to this Court.

Jerry McDonald advances three grounds of error, the second and third of which comprise the two grounds raised by both Steven and Dennis McDonald. Accordingly, the common grounds of error will be treated coincidentally. All grounds of error complain of the refusal of the trial court to dismiss the complaints on which the convictions are bottomed; appellants contend that the Texas Parks and Wildlife Commission [hereinafter Commission] does not have the authority to regulate the possession of deer taken from the Frio River bed of Uvalde County; that the proclamation by the Commission under which the convictions were obtained, exceeds the authority delegated to the Commission by the Legislature, and; that the proclamation under which appellants were convicted and punished, effectively creates two penalties for single violations of the law and thus is a nullity.

It is clear that these complaints implicate the scope of regulatory authority delegated

by the Legislature to the Texas Parks and Wildlife Commission. Consequently, we initially turn to an analysis of that authority as created by statute.

The Parks and Wildlife Code[1] [hereinafter P.W.C. or Code] in effect in this State is composed of §§ 1.001, *et seq.*, through 354.013, of Vernon's Texas Codes Annotated, and was "enacted as a part of the State's continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed by the legislature . . . .[2] [That revision] program contemplates a topic-by-topic revision *of the State's general and permanent statute law without substantive change.*"[3] Section 1.001, P.W.C., entitled "Purpose of Code."

The Code is composed of seven titles, of which Title 2 creates the Parks and Wildlife Department, its governing Commission and, among others, its powers and duties concerning wildlife, including the duty to enforce relevant State law and the limited power to arrest and prosecute. Sections 12.001, 12.101 and 12.102, P.W.C. Title 5 of the Code, entitled "Wildlife Conservation" distills further into Subtitles A through F, entitled "Hunting and Fishing Licenses," "Hunting and Fishing," "Fur-bearing Animals," and the like.

It is in Title 5 of the Code, Subtitle B—"Hunting and Fishing"—that the Legislature positioned Chapter 61, the "Uniform Wildlife Regulatory Act [hereinafter Act], under which our three appellants were convicted. Subchapter A of the Act sets out general provisions, one of which, declaring the purpose of the Act, provides:

"The purpose of [the Uniform Wildlife Regulatory Act] is to provide *a method* for the conservation of an ample supply of wildlife resources in the places covered [herein] to insure reasonable and equitable enjoyment of the privileges of ownership and pursuit of wildlife resources. *[The Act] provides a flexible law to enable the commission to deal effectively with changing conditions to prevent depletion and waste of wildlife resources.*"

Section 61.002, P.W.C.

Applicability of the Act to counties, places and wildlife resources[4] occurs through a legislative enactment of prescriptions in Title 7 of the Code. Thus, Chapter 332, Subchapter A, § 332.001 precisely directs: "Except as provided in this chapter, the Uniform Wildlife Regulatory Act [Chapter 61 of this code] applies to the wildlife resources in Uvalde County."[5] Pursuant to § 61.004 a law making the Act applicable "*repeals* any provision of general or special law regulating the taking of those wildlife resources *when* the commission's proclamation relating to those wildlife resources in the county or place takes effect."

In order to advance the purpose of the Act and effectuate the flexibility deemed necessary "to deal effectively with changing conditions," the Legislature by statute delegated the authority to the Parks and Wildlife Commission, to regulate the times during, and the manners in which, it is lawful to take "wildlife resources." This was accomplished primarily by three legislative enactments, *viz*: (1) provisions which blanketly prohibit "taking wildlife resources" from the places covered by the Act (other than from land or water with the consent of the landowner),[6] "*[e]xcept as*

---

1. By Acts 1975, 64th Leg., p. 1405, ch. 545, effective September 1, 1975.

2. See Article 5429b–1, Vernon's Texas Civil Statutes.

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. For purposes of the Uniform Wildlife Regulatory Act, " 'wildlife resources' means all game animals, game birds, fur-bearing animals, alligators, marine animals, fish, and other aquatic life." Section 61.005(2), P.W.C.

5. Presently the exceptions pertain only to fish, Sections 332.012 and 332.013, with which we are not here concerned.

6. See § 61.022, P.W.C., and recall that all wildlife resources are property of the State, as are certain beds and bottoms of streams, just as the Code reiterates in § 1.011.

*permitted under a proclamation issued by the commission;* [7] (2) a provision which delegates to the Commission the duty to regulate "the periods of time when, [and] the means, methods, manners, and places in which it is *lawful* to take wildlife resources; [8] and finally, (3) a provision which directs that the *mode* by which the Commission is to regulate hunting and possessing some wildlife resources, § 61.021, supra, and the lawful times, means, methods, manners and places in which the public may do so, § 61.052, supra, is by proclamation.[9]

Thus, it was pursuant to this legislative scheme that the Parks and Wildlife Commission issued "Statewide Hunting, Fishing, and Trapping Proclamation No. 127.70.-01.300–393" which became effective July 24, 1979, and was made applicable to all wildlife resources other than migratory game birds in a large number of counties, including Uvalde. Hereafter we call it simply the "proclamation."

The complaint against appellant Jerry McDonald alleges that on a given date he did "possess a deer killed in closed season, to-wit Frio River, Uvalde Co[unty]..." Of course, that his prosecution is based on a violation of the proclamation is not expressly stated in the complaint, but certainly that is the assumption of the parties for they so stipulated.[10] Yet, for several reasons about to be enunciated we are not so sure.

In the first place, any proclamation issued by the Commission is without effect in Uvalde County unless it has been approved by the commissioners court of that county, as specifically required by § 61.202(a) and (e). Indeed, the proclamation in question so provides in its item .302(a).[11] If the commissioners court of Uvalde has formally approved the proclamation, our record fails

---

**7.** Section 61.021, P.W.C., entitled "Taking Wildlife Resources Prohibited," provides:

> "*Except as permitted under a proclamation issued by the commission* under this chapter, *no person may hunt or possess* a game bird, game animal, or fur-bearing animal, or catch a fish, marine animal, or other aquatic life at any time or in any place covered by this chapter."

**8.** Section 61.052, P.W.C., entitled "General Regulatory Duty," provides:

> "(a) The commission *shall regulate the periods of time* when it is *lawful* to take wildlife resources in the places covered by this chapter [the Act].
> (b) The commission *shall regulate the means, methods, manners, and places* in which it is *lawful* to take wildlife resources in the places covered by this chapter [the Act]."

**9.** Section 61.054, P.W.C., provides:

> "(a) *Regulation of the taking of wildlife resources* under this chapter [the Act] *shall be by proclamation of the commission.*
> (b) A proclamation of the commission authorizing the taking of wildlife resources *must* specify:
> (1) the *species, quantity*, age or size, and, to the extent possible, the sex of the wildlife resources authorized to be taken;
> (2) the *means or method* that may be used to take the wildlife resources; and
> (3) the region, county, area, or *portion of a county* where the wildlife resources may be taken."

**10.** In an agreed statement of facts they say that the charge is "possessing illegally taken deer" in violation of the proclamation and that on the date alleged Jerry McDonald "possessed a deer in the State owned river bed of the Frio River in Uvalde County; " from a recitation of historical facts about how commonplace was hunting deer in riverbeds in the county, the parties seem to be saying that the deer had been also *taken* in the Frio River bed by McDonald. Throughout our record the shorthand rendition of the offense is "possess illegally taken deer."

From comments made during oral submission we were alerted that the matter of hunting in riverbeds is a longstanding, live controversy in Uvalde County and elsewhere. In our record is a December 22, 1964 judgment entered by the then County Judge finding an accused not guilty of a similar offense purportedly denounced by an earlier proclamation then extant in that the same was held "violative of the Constitution" and, therefore, void. We have read as well the account of a subsequent attack on a successor proclamation that failed in *Tri County Citizens Rights Organization, etc. v. Johnson, Individually and as Chairman of Texas Parks and Wildlife Commission, et al.*, 498 S.W.2d 227 (Tex.Civ.App.—Austin, 1973, writ ref'd n. r. e.).

**11.** Uvalde is listed as one of several "regulatory counties" with respect to which "these rules shall be approved or disapproved by the commissioners court of each county ... as provided in Section[] 61.202 ..." of the Code, in order to become effective.

to inform us of that requisite fact, but we also assume it did.[12]

Secondly, unlike other provisions scattered throughout the proclamation beginning with the words, "It is unlawful ...," the "rules" said to underlie the instant complaint are not couched in prohibitory terms. Thus, as pertinent here, the proclamation states:

".310.  Open Seasons: General Rules.

\*  \*  \*  \*  \*  \*

(b) There is *no open season* on game animals ... in the state-owned riverbeds in Dimmit, *Uvalde*, and Zavala Counties, including but not limited to, the Nueces and *Frio* Rivers.

\*  \*  \*  \*  \*  \*

(p) Each ... game animal ... *taken or possessed* in violation of these rules shall constitute a separate offense (Section 61.901(a), Texas Parks and Wildlife Code).

\*  \*  \*  \*  \*  \*

.390.  Penalty for Violation.  The penalty provided by law for violation of these rules is a fine of not less than $25 nor more than $200 (Section 61.901, Texas Parks and Wildlife Code)."

Thirdly, as already pointed out *ante* in our examination of the regulatory scheme devised by the Legislature, all hunting and every possession of a game animal is prohibited "at any time or any place" covered by the Act—*unless permitted* under a Com-

mission proclamation.  The statement in General Rule .310(b) is not at all a grant of permission; it is but a delineation of that which remains legislatively prohibited penally by §§ 61.021, 61.022 and 61.901(a) of the Act.

■ It is apparently appellant's contention that, while Rule .310(b) and (p) may effectively prohibit "hunting" at all times,[13] the Legislature did not delegate to the Commission the authority to regulate "possession" of wildlife.  Appellant points to *Land v. State*, 581 S.W.2d 672 (Tex.Cr.App. 1979), which determined that the Legislature delegated only the authority for the Commission to regulate "taking," but not "possession" of wildlife resources, when it passed § 61.052, supra.  [See n. 8, *ante*, for recitation of § 61.052, supra.]  We believe appellant's argument fails to perceive that, despite its somewhat broad pronouncements, *Land v. State*, supra, held narrowly that "any regulations as to possession limits of *channel catfish* were beyond the authority delegated to the Parks and Wildlife Department," *id.*, at 674,[14] and he also misses the fact that even if he were prosecuted under the proclamation, rather than applicable provisions of the Act, the germane rules of the proclamation merely mirror the former.

That proclamation in substance neither added to nor subtracted from § 61.021, supra, which prohibits all hunting and pos-

---

**12.** That the Uvalde County commissioners court has in the past adopted former proclamations is recorded in *Garner v. State*, 556 S.W.2d 332, n. 2 (Tex.Cr.App.1977)—another unsuccessful effort to have a similar proclamation declared unconstitutional.

**13.** Indeed, his co-appellants, both convicted of "hunting," do not make complaint of the Commission's authority to proscribe their conduct by proclamation.

**14.** In coming to their conclusions both *Land* and *Tidwell v. State*, 547 S.W.2d 34 (Tex.Cr. App.1977), which *Land* cites, point to provisions of Chapter 66 of the Code, i. e., § 66.-106(b) and 66.101, respectively, without noticing that § 216.001 of the Code applies the Act, with minor exceptions, to Hunt County, and § 161.001 applies it to Denton County, so that once the proclamations there at issue had tak-

en effect, Subchapter A of the Act, particularly § 61.004, effectively repealed "any provision of general or special law" regulating wildlife resources, including Chapter 66 of the Code. However, neither opinion guides us in the case at bar because our concern is not with possessing channel cat or using a gill net to catch fish, and neither addresses the penal prohibitions in § 61.021 against hunting or possessing a game animal such as deer.  Nevertheless, contrary to the restrictive perception in *Land*, the writer views "to take" as necessarily including "possessing" that wildlife resource which is brought to hand through hunting it.  See Black's Law Dictionary (Rev. Fourth ed.) 1625; Webster's New Collegiate Dictionary (1977); and Webster's Seventh New Collegiate Dictionary (1969).

sessing some wildlife resources statewide "[e]xcept as *permitted* under a proclamation issued by the commission." Thus, appellant's conduct in possessing deer was violative of § 61.021, supra, a statutory provision, which, by proclamation, the Commission had merely affirmatively and expressly reiterated as regards the "state-owned riverbeds in Dimmit, Uvalde, and Zavala Counties."

Appellant Jerry McDonald's first ground of error is without merit.

■ All three appellants complain that Statewide Proclamation 127.70.01.310(p), [set out *ante* at p. 218] is void because it creates two penalties for each offense committed, or results in a suspension of law enacted by the Legislature in violation of Tex.Const., Art. 1, § 28.[15]

Specifically, appellants point to § 62.010, P.W.C. which prohibits, among other things, exceeding bag limits, hunting in closed seasons as provided by *the Code*, and prescribes that a violation of the section constitutes a misdemeanor offense punishable by a "fine of not less than $10 nor more than $200.00." They next point to § 61.901 of the Regulatory Act which provides penalties for violation of *the Act*:

> "(a) A person who violates any provision of *this chapter* or *any proclamation or regulation of the commission issued under the authority of this chapter* is guilty of a misdemeanor and a conviction is punishable by a fine of not less than $25 nor more than $200. * * * "

Therefore, contend appellants, by virtue of the proclamation, either "the ante was upped," (and if so, the Commission suspended § 62.010, supra) or they were left vulnerable to double punishment. Either way, the proclamation fails, they say.

What appellants overlook is § 61.004 of the Act which provides:

"A law making this chapter [the Uniform Wildlife Regulatory Act] applicable to all or a portion of the wildlife resources of a county or place *repeals any provision of general or special law* regulating the taking of wildlife resources *when the commission's proclamation relating to those wildlife resources* in the county or place *takes effect.*"

Clearly the *Legislature* repealed § 62.010, supra, by operation of the above provision, when the proclamation in issue became effective. Because it is not the Commission which "suspended" § 62.010, supra, or any other governing statute, the proclamation authority does not offend Tex.Const., Art. 1, § 28; nor does this scheme permit double liability, because by statute conduct which is violative of a proclamation is punishable pursuant to § 61.901, supra.[16]

■ The remaining ground of error advanced by these appeals complains of the Commission's declaration by Proclamation 127.70.01.310 that there is no open season in the state owned riverbeds in Uvalde, Dimmit and Zavala Counties, directing our attention to § 61.053 of the Act which provides:

> "The commission shall provide open seasons for the taking of wildlife resources if its investigations and findings of fact reveal that open seasons may be safely provided or if the threat of waste requires an open season to conserve wildlife resources."

During the trial of this cause, appellants adduced evidence which tended to show that an open season could be safely provided in the Uvalde County State-owned riverbeds.

The Uniform Wildlife Regulatory Act, however, provides that the *Department* shall make findings of fact based on statutorily mandated studies and investigations of the conditions of all wildlife resources in

---

15. Tex.Const., Art. 1, § 28, provides:

"No power of suspending laws in this State shall be exercised except by the Legislature."

16. For these reasons, the suggestion in *Land v. State*, supra, at 674, n. 3, that "even if the authority . . . had been [delegated to the Commission to regulate 'possession']" those portions of the proclamation doing so "would have the effect of suspending Sec. 66.106(b) and increasing penal sanctions," is in error.

the State according to several criteria. Section 61.051, P.W.C. As § 61.053, supra, [quoted above] indicates, open seasons are provided by the Commission according to departmental findings.

The proclamation in issue here reveals on its face that all requisites of the Act were effected, including public hearings in the affected counties and timely notice thereof, before the proclamation was adopted. See §§ 61.101, 61.102 and 61.103, P.W.C.

Now, for the first time, appellants ask this Court go behind the findings of fact made through orderly procedures by an administrative agency in the implementation of its statutory duties and responsibilities. Attention is called to § 61.106(a), P.W.C., which provides that "[t]he venue for any suit challenging the validity of a proclamation of the commission under this chapter is in *Travis County*." Appellants neither presented this complaint to a Travis County Court,[17] nor, for that matter, to the Uvalde County Court in which they were tried and convicted. As such, nothing is presented for review.

This ground of error is without merit.

The judgments of conviction are affirmed.

17. One means of testing the validity of a rule adopted by the Commission is explained in *Stockton v. Parks and Wildlife Commission*, 571 S.W.2d 338, 342 (Tex.Civ.App.—Austin, 1978, no history).