William D. BLEVINS, Appellant,

v.

STATE of Texas, Appellee.

No. 13-82-330-CR.

Court of Appeals of Texas, Corpus Christi.

March 29, 1984.

Rehearing Granted May 17, 1984.

James A. Smith, Smith & Hood, Port Lavaca, for appellant.

Robert P. McGuill, County Atty., Refugio, for appellee.

Before NYE, C.J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

This is a consolidated appeal from three (3) convictions for killing deer in closed season in violation of TEX.PARKS & WILD. CODE ANN. § 61.021 (Vernon Supp.1982–83), and from a conviction for discharging a firearm on or across a public road in violation of TEX.PENAL CODE ANN. § 42.01(a)(10) (Vernon Supp.1982–83).

Appellant was tried in the County Court before a jury and was assessed fines by the trial court of $100.00 in each case wherein he was charged for killing a deer in closed season, and $200.00 in the case wherein he

was charged for discharging a firearm on or across a public road.

All of the three (3) causes for killing deer in closed season were docketed in the trial court as Cause Nos. 5270, 5271 and 5273. The cause for discharging a firearm on or across a public road was docketed as Cause No. 5272. All of the four (4) causes were consolidated in the County Court for purposes of trial.

The record shows that a complaint was filed for each alleged offense in a justice of the peace court in Refugio County, Texas. Following a trial by a jury in the justice court, the appellant was found guilty in each case and fines were assessed against him. He then appealed those convictions to the County Court of Refugio County where, following pleas of "not guilty," he was again convicted by a jury in a trial de novo. It is from the convictions in the County Court that appellant now appeals.

Counsel for the State has not seen fit to file a reply brief in this Court.

TEX. CONST. art. V, § 16, and TEX.CODE CRIM.PROC.ANN. arts. 44.17, 44.18 (Vernon 1979) provide that in an appeal from a misdemeanor conviction in a justice court to the county court that such appeal shall be tried de novo, upon the original papers, and upon the same issues as tried in the justice court. Neither the Constitution nor the statutes require the filing of an information in the county court upon the perfecting of such appeal because the original complaint in the justice court serves as the functional equivalent of an information in the county court. *Zulauf v. State*, 591 S.W.2d 869 (Tex.Crim.App.1979); *Ex Parte Morales*, 53 S.W. 107 (Tex.Crim. App.1899). See also *Tidwell v. State*, 547 S.W.2d 34 (Tex.Crim.App.1977).

Appellant brings forward five grounds of error. In his fourth ground of error, he contends that there was a fatal variance between the charging instruments (complaints) in the causes which charged him with killing a deer out of season and the proof, which mandated an acquittal. We agree.

Mr. Roy Lawrence, a game warden for the Texas Parks and Wildlife Department, was the sole witness for the State. Appellant did not testify, and did not offer any evidence in his behalf.

■ Each of the complaints for killing a deer in closed season charge that appellant, on February 8, 1981, in the County of Refugio and State of Texas, did then and there "intentionally and knowingly kill a game animal, to-wit, a wild white-tailed deer, at a time of the year not during the open season provided by law for the killing of said game animal." There is no evidence that defendant killed a wild *white-tailed deer*, although there is evidence that defendant killed "wild deer." Consequently, appellant's convictions for killing "wild white-tailed deer" cannot stand.

■ The law is well-established that when something necessary to be described in a criminal complaint (or information or indictment) is described with unnecessary particularity, all the circumstances of description must be proved and cannot be rejected as surplusage because they have thus been made essential to identity. *Green v. State*, 578 S.W.2d 411 (Tex.Crim. App.1979); *Cohen v. State*, 479 S.W.2d 950 (Tex.Crim.App.1972); *Hardy v. State*, 162 Tex.Cr.R. 166, 283 S.W.2d 234 (1955). Since the complaint went further than necessary in alleging that appellant killed a "wild, white-tailed deer," and the prosecution did not prove that the deer were white-tailed deer, there was a fatal variance between the complaint and the proof adduced at trial. The evidence is insufficient to sustain the conviction. Appellant's fourth ground of error is sustained.

In his fifth ground of error, appellant complains that the evidence was insufficient to support convictions for a) killing a wild white-tailed deer during closed season and b) knowingly, intentionally and unlawfully discharging a firearm on or across a public road in Refugio County. In view of our decision to reverse the convictions for the killing of deer out of season, we limit our decision as to the merits of the fifth ground of error to that portion which challenges the sufficiency of the evidence to support the conviction for unlawfully discharging a firearm on or across a public road.

We view the evidence in the light most favorable to the jury verdict, and will uphold the conviction only if a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983) (Opinion on Motion for Rehearing). In reviewing the evidence, we also follow the well established rule that a jury may accept or reject any part of a witness' testimony. *Johnson v. State*, 571 S.W.2d 170 (Tex.Crim.App. 1978).

Mr. Lawrence testified that on the date in question (February 8, 1982), at about 11:30 p.m., he observed the headlights of a vehicle proceeding west along Highway 774, which was a public road in Refugio County, Texas. The vehicle was approximately two miles from Lawrence's position "at a gate" when he first saw the headlights. He further testified:

"... I heard shots being fired. The vehicle lights were turned out, and the next thing I knew, the taillights were facing me as the lights were turned back on, and the vehicle was moving back in an easterly direction, going back toward 35, and then I observed what I thought to be a flashlight leaving the roadway and entering into the pasture on the north side of the highway. This I observed with my binoculars.

Q What type of binoculars were these?

A 750 Bausch and Lombs.

Q Did you have any trouble observing them with the binoculars?

A None whatsoever. It was a clear night.

Q What happened then?

A The vehicle left—well, it just went away from the area where the flashlight was in the pasture, and by this time it had come back to the highway, and then the vehicle proceeded again toward me, to my location.

Q Then what did you see next?

A I observed the vehicle moving at a very slow rate of speed. It approached the Alameda Creek bridge, crossed it, and I observed a spotlight working from the south side of the vehicle, which would have been the driver's side. At this time I had backed my car just inside the gate. I observed the vehicle stop; heard shots being fired; and saw muzzle flashes coming from the driver's side of the vehicle."

Lawrence then told the jury that the vehicle "came to the point where I was. It swept by me, and then came back to me." Lawrence, in response to questions propounded to him; then stated:

"Q What rate of speed was he going before the lights hit your car?

A Very slow rate of speed.

Q After the lights hit your car, what did the vehicle do?

A I turned my red light on, my headlights on, and proceeded to come out of the gate, and they took off at a high rate of speed heading in toward Refugio.

All right. Did you proceed to stop them?

A Yes, I proceeded down the road couple of miles ..."

\* \* \* \* \* \*

"Q When you stopped the vehicle, who did you first observe in the vehicle?

A I observed William Don Blevins as the driver, Roy Leon Follis as the occupant in the passenger side, driver's, the front seat, actually, and Jerry Michael Manning and Barry Blevins sitting in the back of the pickup. It was a club cab type truck, so they were all inside the vehicle."

The vehicle was searched after it had been stopped by Lawrence. Located therein was a .223 rifle, a .30-06 rifle, a .41 revolver, a knife and scabbard on a belt, and a burnt-out spotlight.

Lawrence then placed all of the occupants in the vehicle under arrest. Following their arrest, he went "back down the high (sic) to the direction where they came from," and "at the location nearest me to where the shots were being fired from the vehicle I located two deer." The deer had been "freshly killed" and were "just on the roadside of the fence right against the fence, actually on the road right-of-way." He then proceeded "down the highway to the furtherest point where I had heard the first shots, where I located another dead deer with holes in it. The deer's throat had been cut and the deer "was located on the north side of the highway against the fence."

Appellant argues that the testimony of Lawrence is insufficient to establish that the vehicle in which appellant was riding was on a public road since Lawrence also testified on cross-examination that he could not remember which side of the road the truck was on. We do not agree. The jury was only required to find from the evidence that the vehicle was on a public road when the shots were fired, not that the vehicle (and appellant) were on a particular side of the road. This testimony is sufficient to establish that the vehicle was on the road for the purpose of upholding a conviction for a violation of TEX.PENAL CODE ANN. § 42.01(a)(10) (Vernon Supp.1982–83). Appellant's fifth ground of error, insofar as it pertains to the insufficiency of the evidence with respect to the alleged violation of § 42.01(a)(10) of the Penal Code, is overruled.

Appellant, in his first ground of error, contends that the "trial court erred in refusing to charge the jury that it could draw no inference of guilt from appellant's failure to testify." There were separate charges to the jury on each offense charged, and neither one instructed the jury that "it could draw no inference of guilt from appellant's failure to testify." The record shows that counsel for appellant objected to the failure to so instruct the jury and that all such objections were overruled. The first ground of error is without merit.

In all of the four (4) cases involved in this appeal, the charge of the court to the jury at the guilt-innocence stage of the trial

did not contain an instruction to the effect that the jury was not to consider the defendant's failure to testify as raising any inference of guilt. The jury found the defendant (appellant) guilty in each of the cases, but the punishment in each case was assessed, not by the jury, but by the court since the defendant elected to have his punishment assessed by the court. Under those circumstances it was not error for the trial court not to instruct the jury "that it could draw no inference of guilt" from defendant's failure to testify. Although the trial court may charge the jury at the guilt-innocence stage of the trial on the failure of the defendant to testify as not being any inference of guilt, the failure to so instruct the jury is not error. *Jaffrion v. State*, 501 S.W.2d 322 (Tex.Crim.App. 1973); *Galan v. State*, 164 Tex.Cr.R. 521, 301 S.W.2d 141 (1957); *Ponder v. State*, 159 Tex.Cr.R. 585, 265 S.W.2d 836 (1954); *Pounds v. State*, 142 Tex.Cr.R. 52, 150 S.W.2d 798 (1941). See *Handley v. State*, 480 S.W.2d 738, 741 (Tex.Crim.App.1972), where Judge Onion, writing for the court, said that the trial court was under no duty to give an instruction on the failure of the defendant to testify in his behalf, and omission to charge on the subject does not constitute prejudicial error. Judge Onion also observed:

"Further, the trend today seems to be for the appellant to complain about the giving of the charge not the omission thereof . . ."

Appellant's reliance on *Moss v. State*, 632 S.W.2d 344 (Tex.Crim.App.1982) and *Brown v. State*, 617 S.W.2d 234 (Tex.Crim. App.1981) is misplaced. Neither of the cases are in point and each can be distinguished from the case at bar. In those cases, the trial court instructed the jury at the guilt-innocence stage of the trial on the defendant's failure to testify, but refused, over timely objection to charge the jury in like fashion at the punishment stage of the trial. In the instant case, at the election of appellant, his punishment was assessed by the trial court, not by the jury. There was simply no jury to charge when the trial reached the assessment of punishment stage. Liability to punishment by a jury did not exist in the cases before us. Appellant's first ground of error is overruled.

In view of our decision to reverse the convictions for killing deer out of season and to order an acquittal on all such charges, we neither discuss nor rule on appellant's remaining grounds of error.

All court costs are assessed 25% to the appellant and 75% to the County of Refugio, State of Texas.

The judgments of the County Court in the three (3) causes wherein appellant was convicted for the offenses of killing "deer in closed season" are REVERSED and the judgments are REFORMED in each case to reflect an ACQUITTAL on such charges. The judgment wherein appellant was convicted for the offense of discharging a firearm on or across a public road is AFFIRMED.

Concurring opinion by NYE, C.J.

NYE, Chief Justice, concurring.

Recently the Court of Criminal Appeals in *Clark v. State*, 665 S.W.2d 476 (Tex. Crim.App.1984), once again set forth the rule of court-made law which says that: "when the State alleges unnecessary matter in an indictment or information which is descriptive of an essential element of the crime, such descriptive matter must be proven as alleged even though *needlessly stated*." Because we are an intermediate Court, we are required to follow the rule laid down by the Court of Criminal Appeals and reverse the appellant's convictions. I believe that this rule has been inconsistently, improvidently, and sometimes arbitrarily applied, with results that sometimes border on the absurd. However, I am compelled to concur in the reversal of this case because the highest court in criminal matters has spoken; and we, as intermediate appellate judges, must follow because of

the long-standing doctrine of *stare decisis.* Otherwise, I would affirm the convictions.[1]

Appellant was charged by three complaints with intentionally and knowingly killing a game animal, to-wit, a "wild white tail deer," at a time outside of the open season as provided for by the law. As alleged in the complaints, all actions transpired in Refugio County. The evidence at trial was ample to prove and establish that appellant killed a wild deer out of season; it did not, however, establish that this particular wild deer had a *white tail.* Even though the appellant did not object to this variance in the trial court, he finds himself in the amiable position of being acquitted by this Court of three criminal offenses because of this technical rule of law. In my opinion such a result is not necessary to protect the rights of the accused; nor does it further the interests of the people of this State or the judiciary of Texas.

As set forth by the majority, appellant was tried in the county court based upon the original complaint used in the trial to the justice court; this complaint served as the functional equivalent to an "information." Since the rules with respect to allegations in an indictment and the certainty required thereto also apply to an information, TEX.CODE CRIM.PROC.ANN. art. 21.23 (Vernon 1966), it follows that the same rules apply to the complaints before us today.

An indictment is "the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense." TEX. CODE CRIM.PROC.ANN. art. 21.01 (Vernon 1966). "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." TEX.CODE CRIM. PROC.ANN. art. 21.04 (Vernon 1966). We

call this test "double jeopardy." An indictment should charge the commission of an offense with that degree of certainty as will give the defendant notice of the particular offense with which he is charged. TEX.CODE CRIM.PROC.ANN. art. 21.11 (Vernon 1966). An indictment should not be found insufficient by reason of a defect in form which does not prejudice the substantial rights of the defendant." *See* TEX.CODE CRIM.PROC.ANN. art. 21.19 (Vernon 1967).

Tex.Park & Wild.Code Ann. § 296.001 (Vernon Supp.1984), hereafter the Code, provides that the Uniform Wildlife Regulatory Act (Chapter 61 of the Code), hereafter the Act; applies to deer in Refugio County. Section 61.021 of the Act[2] provides in pertinent part that:

"Except as permitted under a proclamation issued by the Commission under this chapter, no person may hunt ... a ... game animal ... at any time or in any place covered by this chapter."

Hunt is defined by the Act to include kill.[3] Furthermore, wild deer are included as game animals under § 63.001(a) of the Code.[4] Accordingly, appellant committed an offense under the Act when he killed a wild deer out of season. It follows that a complaint charging appellant with either the killing of a wild deer or a game animal out of season, would have been sufficient to apprise appellant of the offense for which he was being prosecuted. *See Sullivan v. State,* 398 S.W.2d 757 (Tex.Crim. App.1966); *see also McDonald v. State,* 615 S.W.2d 214 (Tex.Crim.App.1981). In *McDonald,* the defendant was charged simply with "possess[ing] a deer killed in closed season...."

In delegating to the Parks and Wildlife Commission the power to regulate wildlife resources under the Act, the legislature

---

1. In similar unpublished opinions, this Court today reversed the convictions of Roy L. Follis, our cause number 13–82–331–CR; Barry L. Blevins, our cause number 13–82–332–CR; and Jerry M. Mannings, our cause number 13–82–333–CR, for killing deer in closed season. The reasons set forth in this concurrence also apply

to these companion cases. I, therefore, concur in these opinions as well.

2. (Vernon Supp.1984).

3. § 61.005(1) (Vernon 1976).

4. (Vernon Supp.1984).

first provided for a *blanket prohibition* of taking wildlife resources and then provided for the Commission to modify that prohibition. No showing has been made as to any modification regarding game in Refugio County. While game animal is defined to include wild deer under the Code, nowhere does the Act distinguish between wild deer and white tail deer, black tail deer or any other type of deer in Refugio County. In the case at bar only the killing of a game animal out of season is prohibited by the Act. The indictment before us today, therefore, adequately advised appellant as to the offense with which he was being charged. I fail to see how justice is served as it concerns either the accused or the people of Texas by requiring the State to prove that the deer killed by appellant was a *"white tail"* deer.

A reading of the Court's opinion in *Clark* would lead one to believe that the area of law regarding a variance between the wording of an indictment and the proof offered at trial, is clear. However, a careful examination of Texas case law illustrates that this issue is far from settled. Numerous cases have adopted different rules to become exceptions to this so-called "well settled" rule. A few cases will illustrate this point.

In *Keagan v. State*, 618 S.W.2d 54 (Tex. Crim.App.1981), the Court invoking the doctrine of *idem sonans* stated: "The law does not treat every slight variance in an indictment or information, if trivial, such as the misspelling of a like-sounding name, as fatal." On appeal of an order revoking probation, appellant collaterally attacked an indictment (to which he had pled guilty and was accorded probation) as void. The indictment charged that appellant passed a forged check to J. E., knowing such check had been made so that it purported to be the act of Brent Mezell. The Court observed that the name of the purported maker is "Mezell" whereas the forger, appellant, spelled the name "Mizell." By invoking the doctrine of *idem sonans*, the court found no irreconcilable repugnancy between the purport clause and the tenor clause in the forgery indictment and foreclosed appellant from making a collateral attack upon the indictment. *See also Nitcholas v. State*, 524 S.W.2d 689 (Tex.Crim. App.1975), where "Denny" and "Danny" were found to be *idem sonans*.

The defendant in *Handley v. State*, 480 S.W.2d 738 (Tex.Crim.App.1972) was charged by indictment with possession of narcotic paraphernalia, "to wit: two plastic hypodermic syringes, one needle, one double edge razor blade, and five yellow pieces of cellophane paper, adapted for such use." The Court of Criminal Appeals held that the indictment charged an offense when it alleged that the defendant had possessed narcotic paraphernalia, to-wit: two hypodermic syringes and a needle. It then treated the rest of the allegation *as surplusage*. I would like to treat "white tail" as "surplusage" in the case before us.

To the same effect was *Bergman v. State*, 370 S.W.2d 895 (Tex.Crim.App.1963). There, the Court held that a variance between an indictment alleging theft of "fifty-two dollars and ninety-six cents in money" and proof showing that the defendant gave a check for $52.96 and received $50 in cash and purchased $2.96 worth of groceries was not fatal. It based its decision on the rationale that "Where the value of the property alleged to have been stolen does not determine whether the offense is a felony or a misdemeanor, nor control the punishment applicable to the theft, the allegation as to its value is not descriptive of the offense and need not be proven." A similar result was reached in *Houston v. State*, 98 Tex.Cr.R. 280, 265 S.W. 585 (1924), where the defendant appealed a conviction for theft. The charge in the indictment was theft of a bale of cotton of the value of $131.41. Proof at trial established the value to be $118. The Court found no fatal variance to exist.

In *Hill v. State*, 103 Tex.Cr.R. 580, 281 S.W. 1071 (1926), the defendant was charged by information with damaging a storehouse occupied by "C. A. Swindell." The evidence showed that the house was occupied by a "C. O. Swindell." The Court

adopted the rule that "[a] middle initial is not known at law and a variance between the allegation and proof as to a middle initial is immaterial. A middle initial may be rejected as *surplusage.*" (Citations omitted.) *See also Burke v. State*, 170 Tex.Cr.R. 539, 342 S.W.2d 585 (1961).

Again, in *Davis v. State*, 149 Tex.Cr.R. 96, 191 S.W.2d 734 (1945), the defendant was charged by complaint and information with "unlawfully commit[ting] an aggravated assault and battery and did then and there strike, beat, bruise and wound the said [victim]...." The proof at trial only established that the defendant had placed his hand on the victim's leg and had pulled up her dress. The Court held that the information sufficiently charged an offense of aggravated assault without the need of the phrase "and did strike, beat, bruise and wound," and treated this phrase as *surplusage* in affirming the conviction.

In a similar case, *Cabness v. State*, 142 Tex.Cr.R. 367, 154 S.W.2d 460 (1941), the defendant was charged with "unlawfully commit[ting] an aggravated assault and battery and did then and there strike, beat, bruise and wound the [victim]...." The Court observed that the complaint would have sufficiently alleged an offense had it left out "and then and there strike, beat, bruise and wound." It found this to be an unnecessary allegation and rejected it as *surplusage.*

The defendant in *Potter v. State*, 139 Tex.Cr.R. 590, 141 S.W.2d 647 (1940) was charged by complaint and information with violation of the liquor laws "after an election had been held by the qualified voters of said county in accordance with the law to determine whether or not the sale of intoxicating liquors, to-wit: whiskey, should be prohibited in said county...." The defendant complained that the complaint had been too specific. The Court rejected the defendant's contentions saying that the only kind of election permissible under the Constitution at that time was one prohibiting the sale of intoxicating liquors, of which whiskey would be included. Therefore the word "whiskey" could be eliminated from the pleading and treated as *surplusage.*

Some of our Texas Courts of Appeals have recently refused to reverse a conviction because the indictment or information described a portion of the complaint with unnecessary particularity. The defendant in *Stevens v. State*, 636 S.W.2d 857 (Tex. App.—Waco 1982, pet. ref'd) was convicted for aggravated robbery. The indictment described the brand of the property stolen as "one Fulton brand eight-track tape player"; however, the proof only tended to establish the brand name as "Fulmer" rather than "Fulton." In affirming the judgment, the Court said: "Where the description of the property taken is not a legal requisite of the robbery indictment the gratuitous description can be disregarded as *surplusage.*"

Last year, in the case of *Howard v. State*, 650 S.W.2d 460 (Tex.App.—Houston [14th Dist.] 1983, pet. granted), the defendant was charged by amended indictment with the "attempt to cause the death of [complainant] by intentionally shooting [the complainant] with a gun, to wit: a shotgun...." The Court in affirming the conviction treated the amended part of the indictment, "to wit: a shotgun ..." as *surplusage* and not as descriptive or explanatory of anything legally essential to a valid indictment.

Numerous examples of the relaxation of the variance rule have been applied regarding enhancement allegations and proof. In *Cole v. State*, 611 S.W.2d 79 (Tex.Crim. App.1981), a variance arose between the allegation of the prior offense, "Cause No. 87954" and the proof that it was "Cause No. 87594." The Court stated: "a transpositional error in the cause numbers would not prevent a defendant from finding the record of the prior conviction and presenting a defense."

The Court in *Thompson v. State*, 563 S.W.2d 247 (Tex.Crim.App.1978), examined a variance between an indictment alleging that a prior conviction was final on "October 17, 1972," and a showing that it was in fact final on "October 19, 1972." The

Court determined that there was no motion to quash and no indication that the defendant was harmed or misled, and found no error. *See Thomas v. State*, 496 S.W.2d 578 (Tex.Crim.App.1973).

In *Plessinger v. State*, 536 S.W.2d 380 (Tex.Crim.App.1976), a variance existed in that the indictment alleged that the prior Arizona conviction being used for enhancement was titled "The State of Texas vs. Delbert Lorrain Plessinger, Jr.," while the proof showed that it was really titled "The State of Arizona vs. Delbert Lorrain Plessinger, Jr." The Court said that "[w]hile the carelessness here involved is not to be condoned, we are unable to say that appellant has shown surprise or that he was misled to his prejudice." It further stated that: "The object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice." (Citations omitted.) The judgment was affirmed.

The defendant's indictment in *Baity v. State*, 455 S.W.2d 305 (Tex.Crim.App.1970) alleged that the conviction for the prior offense occurred in the "89th District Court." The Court found no problem with proof that showed it had occurred in the "30th District Court."

The Court of Criminal Appeals' position on variances and enhancement allegations was perhaps best summarized in *Hall v. State*, 619 S.W.2d 156 (Tex.Crim.App.1980), wherein it stated: "It appears that in alleging prior convictions for enhancement of punishment the trend is toward a relaxation of the former rigid rules." To this, I agree.

The question of harm and the need to preserve error have also created a rift in the "well settled rule." In *Johnson v. State*, 160 Tex.Cr.R. 171, 268 S.W.2d 190 (1954), the Court stated: "We disclaim any intention in our original opinion that the question of the insufficiency of the evidence because of variance could not be raised for the first time in this Court. The rule to the contrary is well established." However, in *Malone v. State*, 630 S.W.2d

920 (Tex.Crim.App.1982), the Court, in a better reasoned opinion, affirmed an order revoking probation, despite a claim by the defendant that a variance existed between the allegations in the revocation motion and the proof adduced. The motion alleged the complaining witness was "Powell Battle," and the proof showed the person to be "Paul Battel." The Court concluded that: *"The issue raised here was raised for the first time on appeal, so nothing is presented for review."* (Emphasis supplied.) *See Carrillo v. State*, 591 S.W.2d 876 (Tex.Crim.App.1979); and *Martin v. State*, 541 S.W.2d 605 (Tex.Crim.App.1976).

Also, in *Bowker v. State*, 481 S.W.2d 141 (Tex.Crim.App.1972), there was a variance between the allegation in the indictment that the offense occurred on March 28, 1970, and proof that it occurred on May 28, 1970. In affirming the judgment of the trial court, the Court set forth: "Further, the record is devoid of any motion to quash the indictment or any objections made to the indictment."

The potential of double jeopardy was addressed in *Martin v. State*, 152 Tex.Cr.R. 261, 213 S.W.2d 548 (1948). The defendant appealed a conviction for theft by false pretext. His indictment had alleged the date of the check which formed the basis of the charge as "February 12, 1947," while the check itself showed the date to be "February 13, 1947." The Court stated: "The purpose of the requirement of the correspondence between the allegation and proof is: first, to put an accused on notice as to what the charge against him consists of; and second, in order that he can if necessary, plead the same in the event of a further attempt to put him again in jeopardy for the same alleged act." (Citations omitted.) On appellant's motion for rehearing, the Court further set forth that "[w]hen we consider the whole record *we see no chance for a misunderstanding on the part of appellant as to the offense with which he was charged and, certainly, there is no ground for fear that he could be reindicted and re-tried for the same offense.*" (Emphasis supplied.) Appel-

lant's conviction was affirmed. In the case at bar, I see no possible chance that the appellant misunderstood the offense with which he was charged.

The Fort Worth Court of Appeals, in *Mayfield v. State*, 649 S.W.2d 361 (Tex. App.—Fort Worth 1983, pet. ref'd), had no trouble in holding that a variance between the indictment and evidence was waived for failure to object to the variance. There, the defendant appealed a conviction for robbery with bodily injury. Named in the indictment as the party injured was W.B. Branch. On appeal the defendant alleged that no showing had been made at trial that Wayne Branch, the officer who testified as to the injuries he received, was the same W.B. Branch named in the indictment. In overruling the contention that there existed a fatal variance, the Court said: "Appellant did not raise the variance between the indictment and the evidence at trial, nor does appellant suggest it was designed to mislead him to his prejudice. We hold that the variance between 'Wayne Branch' and 'W. B. Branch' is not material and that the alleged variance was not prejudicial or misleading to appellant." The judgment was affirmed.

To the same effect are *French v. State*, 629 S.W.2d 279 (Tex.App.—Fort Worth 1982, pet ref'd 1982), and *Wray v. State*, 642 S.W.2d 27 (Tex.App.—Texarkana 1982, pet. granted 1983).

In *Wray*, the indictment alleged assault by pointing a shotgun at the victim. There was no evidence that the defendant pointed or aimed the gun at the victim. There the Court said: "An indictment is not rendered fatally defective because there is a variance between the allegations and the proof. Rather, the variance, if fatal, may render the evidence insufficient to sustain a conviction." Finding no showing of surprise or that the defendant was misled to his prejudice, the Court found the variance not to be fatal to the conviction.

Perhaps the rationale for such divergence from the general rule laid down by the Court of Criminal Appeals, that the State must prove matter in an indictment descriptive of an essential element of the crime, can be discerned from examining cases strictly construing this rule of law. When you follow the literal application of this rule, as the Court of Criminal Appeals has done in many cases, a more bizarre result is reached. For instance:

In *Easley v. State*, 167 Tex.Cr.R. 156, 319 S.W.2d 325 (1959), the defendant had been convicted under an indictment alleging theft of "corporeal personal property of H. E. Butt. . . ." The evidence at trial established that the money which was the subject of the theft belonged to H.E. Butt Grocery Company, a Texas Corporation of which H.E. Butt, as president, owned, either individually or as trustee, all of the company's stock. The Court concluded that the evidence established that H.E. Butt was not in fact the owner of the money and reversed the conviction.

The defendant in *Gibbs v. State*, 610 S.W.2d 489 (Tex.Crim.App.1980) was charged by indictment with appropriating property from Montgomery Ward and Company, Incorporated. At trial, the evidence only established that the property belonged to either Montgomery Ward Store or to Montgomery Ward Department Store. Since it was never established that the property belonged to "Montgomery Ward and Company, Incorporated," the Court found a fatal variance. The conviction was reversed.

In *Flippin v. State*, 134 Tex.Cr.R. 352, 115 S.W.2d 665 (1937), the defendant had been convicted of theft of property of a value over $50. The defendant was charged by indictment with the theft of 2,500 pounds of "sudan grass seed." The proof at trial only established that the property stolen was "sudan" or "seed" or "sudan seed." The Court found this to be a fatal variance and reversed the case.

A conviction was reversed in *Jacobs v. State*, 129 Tex.Cr.R. 617, 91 S.W.2d 348 (1936) because the indictment alleged unlawful plating of cotton with a particular staple of cotton when the proof established that the cotton used was in fact of differ-

ent staple. The Court stated "[i]t is unfortunate that the attorney for the State saw fit to set out the exact grade and class of the two grades of cotton used. If, with intent to deceive, one plate[s] a bale of cotton, putting higher grade cotton on the outside and lower grade on the inside, he would be guilty." [5]

5. While I have only begun to scratch the surface of all the cases reversed in Texas for technical variances between the phraseology of an indictment and the proof adduced at trial, the Court of Criminal Appeals has not confined its incorporation of technicalities simply to variance issues. For example, in *Crowl v. State*, 611 S.W.2d 59 (Tex.Crim.App.1981), the Court reversed a conviction for possession of a controlled substance. The defendant had been indicted for "intentionally possess[ing] a controlled substance, namely, cocaine." As the Texas Controlled Substances Act stood at that time, coca leaves and its derivatives, except for decocainized coca leaves or extractions which do not contain cocaine, were a controlled substance within Penalty Group 1. Since the indictment failed to state why cocaine was a controlled substance in a penalty group the majority of the Court found the indictment fundamentally defective; this result sparked numerous reversals. In *Brasfield v. State*, 600 S.W.2d 288 (Tex.Crim.App.1980), the defendant was indicted for causing the death of Johnny Turner while in the course of committing kidnapping. The Court reasoned that since the indictment failed to allege the name of victim of the kidnapping, that the indictment failed to provide adequate notice, and it therefore reversed the conviction. In a similar case, *King v. State*, 594 S.W.2d 425 (Tex.Crim.App.1980), the defendant stood convicted for capital murder. He had been indicted for "unlawfully while in the course of committing and attempting to commit kidnapping, aggravated rape and robbery, intentionally caus[ing] the death of Michael Clayton Underwood...." The record showed that Kelly Brei testified that: 1) she and Underwood were approached by the defendant and a companion, who with the aid of a shotgun forced Brei and Underwood into their pickup; 2) after driving around for a while and threatening the victims with murder and rape, the assailants stopped and directed Underwood to get out of the truck and lie on his stomach; 3) the defendant hit Underwood in the head several times with the shotgun and then removed money and a lighter from his body; 4) the defendant and his companion then drove Brei around a short while, then stopped and took turns raping and sodomizing her; 5) they then went to another location where the sexual assaults continued. The Court concluded that since the indictment had alleged rape as well as kidnapping and robbery for aggravating offenses to the murder, the indictment needed to allege the name of the victim of the rape. Accordingly, it reversed the conviction. In *Rucker v. State*, 599 S.W.2d 581 (Tex.Crim.App.1980), the defendant had been convicted of aggravated rape. His indictment charged that he "by force and by threatening the imminent infliction of serious bodily injury and death to P_____ K_____ O_____, a female not his wife ... [had] sexual intercourse ... without consent of the complainant." The record showed that the victim had sustained bodily injuries consisting of black and swollen eyes, a swollen face, cuts inside her lips, bruised chest and breasts, scratched and abraded buttocks and legs, a rash from poison ivy and pain. Most of these injuries were the result of the defendant hitting the victim in the face and chest with his fist. The Court concluded that since the victim did not suffer any concussion, no serious permanent disfigurement and no protracted loss or impairment of any part of her body, she did not suffer "serious bodily injury" as defined by the Penal Code. Finding the evidence insufficient to support the aggravating element of the rape, it reversed the conviction.

In *Danzig v. State*, 546 S.W.2d 299 (Tex.Crim.App.1977), the defendant was convicted of aggravated assault with a deadly weapon. There, the indictment alleged the assault to have been committed with a knife, a deadly weapon. At trial it was established that this knife was a small pen knife with a blade about three or four inches long. The defendant had stabbed the victim in the back, arm and over his nose. A police officer testified that when he arrived on the scene the victim was bleeding profusely. The Court examined the testimony as to the manner in which the knife was used and concluded that the wounds inflicted by the knife were not such as were capable of causing death or serious bodily injury. It then reversed the conviction based upon insufficient evidence.

In *Reynolds v. State*, 547 S.W.2d 590 (Tex.Crim.App.1977), the defendant was indicted for "unlawfully exercis[ing] control over property, namely one billfold and cash money, with the intent to deprive the owner, ... of the property ... and the Defendant stole the property from the person of the Complainant." The Court found the indictment fundamentally defective because it failed to allege that the property was taken "without the owner's effective consent." In *Northern v. State*, 150 Tex.Cr.R. 511, 203 S.W.2d 206 (1947), the defendant was indicted for "kill[ing] Fannie McHenry by then and there kicking and stomping the said Fannie McHenry...." The Court reversed the conviction because the indictment failed to allege that the kicking and stomping was done with the defendant's feet. The Court spoke of a "constitutional requirement that the accused be informed of the nature of the offense with which he is charged...." The Court further stated: "Football and baseball must be played according to the rules of the game. Likewise, criminal cases

It would seem to me that the more practical approach to this problem would be to adopt the reasoning taken by the Federal Judiciary. It is a very simple and easy to understand rule. There, a variance between an indictment and the proof adduced at trial is immaterial unless the substantial rights of the accused have been prejudiced. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). It is not necessary to prove the exact words charged in the indictment, if the charge is substantially proved. Any variance is immaterial. *United States v. Laite*, 418 F.2d 576 (5th Cir.1969). "Not every variance between the indictment and the proof is fatal to a conviction. In order for a variance to be fatal, thus mandating reversal, it must affect the substantial rights of the accused either (1) by insufficiently informing him of the charges against him such that he is taken by surprise and prevented from presenting a proper defense, or (2) by affording him insufficient protection against reprosecution for the same offense." (Citations omitted.) *United States v. Sheikh*, 654 F.2d 1057 (5th Cir. 1981), cert. denied 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). Only such a fatal variance between the crime charged and the proof adduced should mandate a reversal. *United States v. Eaton*, 501 F.2d 77 (5th Cir.1974).

The very best approach in my opinion on variances and surplusage is again used by the federal judiciary. They hold that the failure to present the variance to the trial court amounts to a waiver. *United States v. Cauble*, 706 F.2d 1322 (5th Cir.1983), petition for cert filed. I think the Texas legislature should adopt a "bill of particulars" rule, the effect of which would be that the failure by the defendant to object would amount to a waiver.

While the Court of Criminal Appeals states in *Clark* that the law in this area is "well settled," I disagree. Until such time as the Court of Criminal Appeals and the legislature make an indepth examination of Texas criminal procedure law in this area and clear up the inconsistencies contained therein, the law will never truly be "settled." The result reached today by the majority of this Court is probably correct as the law now stands. However, justice is not served. I, therefore, concur in the result.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

NYE, Chief Justice.

On the original submission of the consolidated appeals, we reversed the convictions for killing a deer in closed season and ordered an acquittal (Chief Justice Nye concurring with written opinion). We affirmed the trial court's conviction of discharging a firearm on or across a public

---

must be instituted and tried according to accepted rules of procedure, and these rules cannot be varied to satisfy the clamor of those who demand their relaxation in cases where the facts arouse popular indignation." What is particularly interesting about this case is that in *Alston v. State*, 170 Tex.Cr.R. 17, 338 S.W.2d 723 (1960), the defendant stood charged by complaint and information alleging that he "unlawfully ... did commit an aggravated assault ... and did then and there strike the [victim] with his hands. The evidence failed to explicitly show that the defendant had actually struck the victim "with his hands." The Court disposed of this problem saying: "'With his hands' should also be considered as surplusage. *If, however, the use of the hands be considered as descriptive of the assault, we do not agree with appellant's contention that it cannot be reasonably inferred that the assault upon Mrs. Tarpley was made with the hands, or that this allegation was not

*substantially proved.* * * * If, as she testified, appellant "shoved" Mrs. Tarpley; took a stick away from her and 'jerked' her out of the pickup, leaving her to crawl away, *he necessarily used his hand or hands in committing such assault. There is no evidence suggesting that appellant used any instrument other than the hands in making the assault.*" (Emphasis added.)

As a final note, in *Gragg v. State*, 148 Tex.Cr.R. 267, 186 S.W.2d 243 (1945), the defendant stood convicted of the murder of his wife. His indictment charged that he "kill[ed] Flora Gragg by then and there drowning the said Flora Gragg...." In reversing the case, the Court reasoned that if the nature of the drowning is known to the Grand Jury (and there was no showing that it was not) it must be set forth in the indictment. Since the indictment failed to allege that the drowning had occurred in water, it was defective.

road. In doing so, we overruled appellant's first ground of error in which he contended that the trial court erred in refusing to instruct the jury that his failure to testify could not be considered as raising an inference of guilt. On Motion for Rehearing, appellant again asserts error in the trial court's refusal to instruct the jury concerning the appellant's failure to testify. We now sustain the appellant's first ground of error and reverse appellant's conviction for discharging a firearm and remand this case to the trial court.

As noted by our Court of Criminal Appeals in *Brown v. State*, 617 S.W.2d 234 (Tex.Crim.App.1981), a defendant "has a right to a requested instruction on failure to testify under the privilege against compulsory self-incrimination of the fifth amendment, as made applicable to the states by the fourteenth amendment, at the guilt innocence stage of the trial."

In all of the four cases involved in this appeal, the trial court did not instruct the jury that it was not to consider the defendant's failure to testify as raising any inference of guilt. The record shows that appellant's attorneys objected to the trial court's failure to so instruct and so assert this error again on motion for rehearing.

We find that the trial court erred. This rule for the requested instruction is mandated by the United States Supreme Court's decision in *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). The Supreme Court in *Carter* said:

"The principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so."

Accordingly, appellant's motion for rehearing is granted, the conviction for discharging a firearm is reversed, and the cause remanded. Appellant's convictions for killing deer in closed season are re-

versed, and the judgments reformed to reflect an acquittal on such charges.

BISSETT, J., not participating.