Jesse F. DEAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 48120.

Court of Criminal Appeals of Texas.

April 24, 1974.

Chagra & Chagra, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Anita Ashton, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant, in a jury trial, was convicted of murder with malice. Punishment was assessed at twenty-nine years.

This is a companion case to Chambers v. State, Tex.Cr.App., 508 S.W.2d 348, (No. 47,656, March 20, (1974), and involves the same murder of the same deceased. The cases were tried separately.

Since the evidence introduced on the two trials is substantially the same, reference is

made to the opinion in *Chambers, supra,* for a discussion of the facts. Testimony dealing specifically with the appellant not discussed in *Chambers* will, where appropriate, be set forth.

Appellant in his second ground of error contends that the evidence of the accomplice witness was not sufficiently corroborated by other evidence tending to connect appellant with the offense.

The accomplice Munnerlyn testified substantially as he did in *Chambers* and his testimony will not be repeated in its entirety. His evidence very definitely reflects that appellant was a member of the Bandidos, and was present and actively participating in the events leading up to the shooting of deceased, and that he was present at the "grave" participating as a principal with Chambers and others in the shooting.

After Chambers had heard from "Chunky" that deceased had sold "Chunky" baking powder instead of speed, as recited in *Chambers, supra,* Munnerlyn testified it was appellant, "Chunky," Munnerlyn and one "Crazy Ray," another member of the Bandidos, who were sent in the white camper to get Ray and Mel Tarver, the two men subsequently murdered. Munnerlyn testified that when they arrived at the Connellys' home, where the Tarvers were staying, a man was knocking at the front door, and that when appellant and "Chunky" went to the door, they got in a fight with this man, causing him to run off. Thereafter, "Chunky" and appellant went in the house, and by force and use of firearms brought the two Tarver men to the camper, got them in it, and took them to Chambers' house. From there, they were taken about 2½ miles north of El Paso in the camper by Chambers, appellant, "Crazy Ray" and Munnerlyn, where the shooting of the Tarvers occurred. Although appellant did not fire any shots, the testimony of Munnerlyn was that in every other way he actively supported, encouraged, and participated in the occurrence.

In Chambers v. State, *supra,* we quoted from Cherb v. State, Tex.Cr.App., 472 S.W.2d 273, 279 as follows:

"The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense."

See also Booth v. State, Tex.Cr.App., 499 S.W.2d 129; Thompson v. State, Tex. Cr.App., 493 S.W.2d 913.

Applying this test, we eliminate the testimony of the accomplice witness, and determine whether there is other inculpatory evidence of incriminating character in the record which tends to connect appellant with the commission of the crime.

The murder of deceased was proved by the officers who discovered the two bodies at the grave and the medical testimony of the cause of death. Testimony of the fraudulent sale of baking powder to "Chunky" was given by the two Connellys and by witness Baird. Two witnesses who were at the Connellys' residence to purchase some "speed" about 9:00 P.M. on December 22, 1972, identified appellant and "Chunky" as two of the men who came there and spoke to Mel Tarver, and called for Ray Tarver, the deceased. Baird, one of these witnesses, said that at the door of the house appellant threatened him with a gun, they engaged in a short fight and that he and the other witness were run off by appellant and "Chunky". McCabe, who was with Baird, testified that these men arrived in a camper with New Mexico license plates. Both appellant and "Chunky" were at the Chambers' home with Chambers when the officers raided the house, secured the weapons, and other objects, and arrested the men. Expert evidence reflected that expended shotgun shells found in the house were fired from the shotgun found

there, and blood taken from the stains on the blanket found there matched blood taken from the deceased. A partially burned wallet found at the house was similar to deceased's wallet. Boots taken from appellant in jail two days after the arrest were identified by Connelly as appearing to be the boots deceased Ray Tarver was wearing at his house on the night of the killing. Connelly called them "waffle stompers" because the soles were made like waffles. The cream colored Chevrolet truck with an aluminum colored camper and New Mexico license, parked in front of the Chambers' home at the time of the raid, was identified by a non-accomplice witness as similar to the truck used by appellant and "Chunky" when they were at the Connellys' house to get deceased and his brother about 9:00 on the night of the offense.

Although the presence of appellant two days after the offense in the house where the death weapons were found by the officers would not alone be sufficient to tend to connect him with the crime, when coupled with the other circumstances shown it is a link in the chain which does contribute to the showing of his guilt. Cherb v. State, *supra*, and authorities there cited. We find that the evidence, when considered in its totality, is sufficient to tend to connect appellant with the commission of the offense, and to corroborate the testimony of the accomplice witness Munnerlyn.

Appellant's second ground of error is overruled.

Appellant in his first ground of error alleges that "The court erred in allowing the introduction of evidence illegally seized under a search warrant which did not meet the Fourth Amendment requirements that such warrant particularly describe the things to be seized." Appellant's complaint is addressed to the scope of the search, and not to the validity of the warrant.

By stipulation of the parties, the transcript of the evidence given at the hearing on the defendant's motion to suppress in the trial of Donald E. Chambers before the same court and judge was admitted before the court in the instant case, without further evidence being introduced. This transcript of the evidence was considered by the court, and the appellant's motion to suppress the evidence was overruled, and evidence concerning the seizure of the various articles by the officers under the warrant was admitted on the trial over appellant's objection.

In Chambers v. State, Tex.Cr.App., 508 S.W.2d 348, (No. 47,656 March 20, 1974), we passed on this same ground of error as applied to the same evidence, and overruled it. For the reasons stated in our opinion in *Chambers,* appellant's first ground of error is overruled.

■ Also, in *Chambers, supra,* we overruled the same contention now made by appellant in his third ground of error, where he contends that his boots were illegally taken from him for comparison while he was under arrest and confined in jail. The contention is without merit. Olson v. State, Tex.Cr.App., 484 S.W.2d 756 (on rehearing); United States v. Edwards, —— U.S. ——, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

■ Appellant has filed in this Court his First Supplemental Brief, in which he contends for the first time that "The trial court erred in allowing the introduction of evidence under a search warrant which did not meet the Fourth Amendment requirements that such warrant be issued by a neutral and detached magistrate." He points out that Justice of the Peace Snooks acted as coroner at the grave side of deceased, and investigated the details of the deaths of deceased and his brother and that he also witnessed the statement of the informer, before the search warrant was issued by him. Appellant concludes that therefore Judge Snooks was not a "neutral and detached" magistrate when he listened to the facts and made an "independent determination" of probable cause to issue the warrant.

The contention of appellant having been for the first time briefed on appeal does not meet the requirements of Art. 40.09, § 9, Vernon's Ann.C.C.P. Fries v. State, Tex.Cr.App., 495 S.W.2d 909. However, since a question of constitutional dimension is raised, we shall consider appellant's contention. Ellis v. State, Tex.Cr.App., 502 S.W.2d 146; Price v. State, Tex.Cr.App., 475 S.W.2d 742.

In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, cited by appellant in support of his contention, the Court held a search warrant to be invalid as violating the warrant requirement of the Fourth Amendment because issued by the "chief governmental agent of the State," the Attorney General, who was actively in charge of the investigation, and the chief prosecutor at the trial. The Court in holding that the inferences to be drawn in determining probable cause for issuing a warrant requires a neutral and detached magistrate cited with approval the statement in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, also relied on by appellant, that the Fourth Amendment requires that in determining whether a search warrant should issue, "those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson involved a warrantless search which the Court held to be illegal, and the essence of the opinion was that the officers should have submitted their evidence of probable cause to a magistrate. See also United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L. Ed.2d 752, where the warrant was issued by a member of the executive branch of the United States government who was acting as prosecutor.

Appellant also cites Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L. Ed.2d 917, as holding:

"No search required to be made under a warrant is valid if the procedure for the issuance of the warrant is inadequate to ensure the sort of neutral contemplation by a magistrate of the grounds for the search and its proposed scope, which lies at the heart of the Fourth Amendment."

*Sibron* also involved a warrantless search, where the neutral contemplation of a magistrate was not utilized by the officers making the search.

■ In acting as coroner at the scene of the crime, Judge Snooks was charged with the duty of obtaining information as to whether death was caused by some criminal act, and to furnish the foundation for a criminal prosecution in case the death was shown to be felonious. Parsons v. State, 160 Tex.Cr.R. 387, 271 S.W.2d 643, cert. denied, 348 U.S. 837, 75 S.Ct. 36, 99 L.Ed. 660. See Tocher v. State, Tex.Cr. App., 501 S.W.2d 921. The fact that in such capacity he may have secured some information concerning the manner in which the death of deceased occurred did not cause him to become a prosecutor, or a law enforcement officer. In issuing the search warrant, he acted upon the affidavit of the officer and the statement of the informer, both of which were attached to the warrant. Although he witnessed the statement made by the informer, this was incident to the issuance of the search warrant in performing the duties of his office as a magistrate.

In performing his duties as a coroner and a magistrate, there is no showing that Justice of the Peace Snooks was anything other than a neutral and detached magistrate, duly qualified to determine from the affidavit and statement furnished him that probable cause existed for the issuance of the search warrant.

The judgment is affirmed.

Opinion approved by the Court.