Manuel CONTRERAS, Aka Manuel
Vela Contreras, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–90–405–CR, 13–90–406–CR, 13–90–407–CR and 13–90–408–CR.

Court of Appeals of Texas,
Corpus Christi.

June 25, 1992.

Rehearing Overruled Sept. 17, 1992.

Discretionary Review Refused (Appellant)
Jan. 27, 1993.

Discretionary Review Refused (State)
Jan. 27, 1993.

Mark Alexander, McAllen, Ricardo Floes, Edinburg, for appellant.

Rene Guerra, Dist. and County Atty., Theodore C. Hake, Asst. Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

On the night of March 2, 1989, a man broke into the home of C. and D. Garcia, an elderly Edinburg couple. Before he left, the intruder beat C., forced D. to engage in sexual intercourse, and robbed them of some money. For these acts, appellant was charged in a four-count indictment with the offenses of burglary, aggravated sexual assault, robbery, and injury to an elderly individual. A jury found him guilty on all counts and assessed prison terms of twenty years, ninety-nine years, fifteen years, and ninety-nine years, respectively. We acquit appellant of robbery and affirm the other convictions.

Appellant raises twenty-three points of error which we will group for discussion when possible. At the outset, we will briefly summarize the events culminating in appellant's arrest. We will then address appellant's points, elaborating on the facts when necessary to address his specific contentions.

Between March 1989 and February 1990, six elderly Edinburg women were sexually assaulted during nighttime burglaries of their homes. The offenses occurred under similar circumstances, leading the police to believe that the same individual was responsible for the crimes. Through their investigation of these crimes, the Edinburg Police Department gathered shoe prints, a fingerprint, and blood characteristics of the assailant. Despite this physical evidence, they did not have sufficient information to identify the assailant.

In January 1990, toward the end of the series of assaults, one of the victims was able to see her assailant during the attack, and she made a composite drawing of him. The publication of that drawing led Crime-Stoppers to receive a call which indicated that appellant might fit the description. The police included appellant on a list of suspects, which by this time, according to one officer, included "a lot of people."

The police apparently were unable to locate appellant, but on February 16, Officer Reyes Ramirez talked to appellant's girlfriend. She identified appellant as a person involved in the cases. The record does not indicate what action, if any, the police took to find appellant after talking to his girlfriend.

Nonetheless, early on the morning of February 26, the Hidalgo County Sheriff's Department arrested appellant for a sexual assault apparently unrelated to the offenses then being investigated by the Edinburg Police. The Sheriff's Department no-

tified the police of appellant's arrest, and on that same morning, the police obtained appellant's fingerprints from the Hidalgo County Jail. Officer Luz Gomez worked on the prints most of the morning and determined that appellant's prints matched those taken from one of the crime scenes. After he made the comparison, Gomez informed his supervisor, and they went to the Sheriff's Department where Gomez requested that appellant's shoes be seized for further investigation. Someone at the Sheriff's Department went and retrieved appellant's shoes for Gomez, who then took the shoes for analysis.[1] The prints from these shoes were found to be similar to some of the prints left at some of the crime scenes. After the fingerprints and shoes were found to compare, the police sought and obtained two search warrants. These warrants led to the discovery of evidence used against appellant at his trial for the offenses against the Garcias.

### Seizure of Evidence

In points six, seven, and eight, appellant contends that the trial court should have suppressed any evidence gathered as a result of the Edinburg Police Department's seizure of his fingerprints and shoes from the Hidalgo County Jail. Appellant does not challenge the legality of his arrest but contends that as he was incarcerated in jail, the police had time to obtain, and should have obtained, a warrant to seize these items. Appellant argues that because the warrantless seizure does not fall within a recognized exception to the warrant requirement, the evidence was illegally obtained.

■ We first address the taking of appellant's fingerprints. The Court of Criminal Appeals has held that relatively unintrusive identification evidence, like fingerprints, line-ups, and handwriting exemplars, gathered without a warrant while a person is in custody after arrest, does not violate the Fourth Amendment. *Mulder v. State*, 707 S.W.2d 908, 914 (Tex.Crim.App. 1986). Appellant's prints were taken at the

jail, and the police merely used these prints to compare with prints from the crime scenes. We find no error in the trial court's ruling that the police did not need a warrant to take appellant's fingerprints for comparison, and we turn to the taking of appellant's shoes.

■ Unlike the fingerprints, the taking of the shoes presents a more complex issue. The Supreme Court of the United States has held that police are not required to obtain a warrant to seize, at the jail, the clothing of a defendant who is lawfully in custody as the result of a lawful arrest. *United States v. Edwards*, 415 U.S. 800, 806–07, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974).

Edwards was arrested for burglary and jailed in his own clothes. During the course of the investigation, it was learned that paint chips from the point of entry might be on Edwards' clothing. Without a warrant, the police seized and examined the clothing, finding matching paint chips. This evidence was admitted at trial. *Edwards*, 415 U.S. at 804, 94 S.Ct. at 1237.

Following *Edwards*, the Court of Criminal Appeals held that the warrantless seizure of a suspect's clothing subsequent to a legal arrest, while he is in custody, is permissible. *Marquez v. State*, 725 S.W.2d 217, 234 (Tex.Crim.App.1987); *see Deal v. State*, 508 S.W.2d 355, 357 (Tex.Crim.App. 1974).

At first blush, *Edwards* and its progeny would appear to control the present case. Upon closer review, however, it is not entirely clear that the *Edwards* line of cases should control. Unlike the present case, *Edwards* concerned a situation where the personal effects were seized as evidence of the crime for which the defendant was arrested. In the present case, appellant's shoes were seized for use as evidence in an offense *unrelated* to his arrest. Thus, the exact issue in this appeal is whether the rationale in *Edwards*, which made the Warrant Clause inapplicable to post-arrest sei-

---

1. The record does not show whether the shoes were seized from appellant's feet or from the Sheriff's property room. Although the State did not develop this fact, it does not appear to be

constitutionally significant. *See United States v. Oaxaca*, 569 F.2d 518, 523–24 (9th Cir.1978), *cert. denied*, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978).

zures under the facts there, applies when the seizure is unrelated to the arrest. We have found several cases to guide us and find that, at least under the facts of this case, the police were not required to obtain a warrant to retrieve appellant's shoes.

Generally, the courts have held that a lawfully arrested person has no expectation of privacy with respect to such property. *See United States v. Thompson,* 837 F.2d 673, 674 (5th Cir.1988); *Ex parte Hilley,* 484 So.2d 485, 490 (Ala.1985); *People v. Tyrell,* 190 Cal.App.3d 169, 235 Cal.Rptr. 272 (2nd Dist.1987). Other courts have not required the police to obtain a warrant to seize property already in their custody, but they have not expressly articulated a rationale for their holding. *See State v. Copeland,* 530 A.2d 603 (Conn.1987); *State v. Wheeler,* 128 N.H. 767, 519 A.2d 289, 292 (1986).[2] We have found no post-*Edwards* case which required the police to obtain a warrant to seize items which were already in their custody and exposed to their view.

As other courts have done, we look to *Edwards* for guidance. The Court stated:

> While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.

*Edwards,* 415 U.S. at 808–09, 94 S.Ct. at 1239–40. None of the language in *Edwards* suggests that the arrested person's privacy rights are "taken out of the realm of protection" for evidence related to the crime which sent him to jail but remain intact for all other purposes. Indeed, the Court only cautioned as follows:

> Holding the Warrant Clause inapplicable in the circumstances present here does not leave law enforcement officials subject to no restraints. This type of police conduct "must [still] be tested by the

Fourth Amendment's general proscription against unreasonable searches and seizures." (citation omitted.) But the Court of Appeals here conceded that probable cause existed for the search and seizure of respondent's clothing, and respondent complains only that a warrant should have been secured. We thus have no occasion to express a view concerning those circumstances surround custodial searches incident to incarceration which might "violate the dictates of reason either because of their number or their manner of perpetration." (citations omitted.)

*Edwards,* 415 U.S. at 808 n. 9, 94 S.Ct. at 1239 n. 9.

With this language in mind, and in view of the other courts which have faced the same issue, we find that the police were not required to obtain a warrant. Here, the search and seizure was made when the police already had identified appellant as a suspect in the sexual assault offenses, when the sheriff's department had arrested him for a similar offense, and when appellant's fingerprints were already found to match prints left at the scene of one of the sexual assaults. Under these circumstances, the seizure of appellant's shoes was reasonable. The trial court correctly held that the seizure of shoes was proper.[3]

After finding that the appellant's fingerprints matched prints left at two of the crime scenes, Officer Reyes Ramirez sought, and obtained, a warrant to search appellant's home for a cap, black jacket, boots, shoes, and sneakers which might have been worn during the offenses. The police also sought and obtained a warrant to take samples of appellant's blood, hair, and saliva.

By executing the search warrant at appellant's house, the police found another pair of shoes which had tread patterns sim-

---

**2.** In a pre-*Edwards* case, the Supreme Court of Michigan held that the state improperly seized a defendant's shoes to compare them with prints left at a crime similar to the one he was charged with. *People v. Trudeau,* 385 Mich. 276, 187 N.W.2d 890, 891–92 (1971).

**3.** In *Heitman v. State,* 815 S.W.2d 681, 690 n. 3 (Tex.Crim.App.1991), the Court of Criminal Ap-

peals warned that briefs asserting rights under the Texas Constitution were inadequate if they did not provide argument or authority in support of the State ground. Appellant does not present any argument or authority that the issue should be resolved differently under the Texas Constitution. We thus decline to address an independent State ground.

ilar to shoe prints left at the crime scenes. The prints from these shoes matched the shoe prints left at the home of F. and B. Williams, and these shoes were admitted into evidence at trial when the Williams testified to the crimes appellant committed against them. The State also admitted evidence that appellant's fingerprints matched a print left at the Williams' house. By executing the search warrant for appellant's blood, the State was able to determine that a rare blood enzyme was common to appellant's blood and seminal stains left in the Garcias' house.

Appellant next contends, presuming both warrants were based on the illegal warrantless search at the jail, that the shoes, fingerprint comparisons, and blood analysis should have been suppressed. We disagree. Having found that the seizure at the jail was legal, we find that the search of appellant's house and the seizure of appellant's blood were not the fruits of any illegality. Because there is no "poisonous tree," there is no "poisonous fruit." *See Goodwin v. State*, 799 S.W.2d 719, 729 (Tex.Crim.App.1990).

■ Appellant next contends that the blood samples should have been suppressed because the State did not show that they were taken in accordance with accepted medical procedures. The warrant ordered that samples of blood, saliva, and hair "shall be obtained from the body of said Manuel Contreras by a qualified medical technician in accordance with accepted medical procedures."

Appellant contends that the State failed to prove that it so executed the warrant. We disagree. Brenda Giesbrecht, the nurse manager at the emergency department at Edinburg General Hospital, testified that she was a registered nurse authorized to draw blood. Although she could not positively identify appellant in the courtroom, she testified that she took blood, saliva, and hair samples from a person known to her as Manuel Contreras. She identified courtroom exhibits as those she took. John Fuentes stated that he worked in the Edinburg Hospital emergency room and assisted Giesbrecht in obtaining appellant's body samples. He combed and pulled appellant's head and pubic hair.

Fuentes knew of no special training needed to comb or pull hair.

While there is no explicit testimony that the samples were taken "in accordance with accepted medical procedures," Giesbrecht's and Fuentes' testimony circumstantially establishes that the samples were so taken. Moreover, appellant introduced no evidence that they were not taken in accordance with the warrant's requirement. Appellant's sixth, seventh, and eighth points of error are overruled.

### EXTRANEOUS OFFENSES

■ In point nine, appellant contends that the trial court erred by admitting evidence of the extraneous offenses committed against the Williams. We disagree. To explain our holding, however, we must review some of the testimony and explain the State's need to introduce the extraneous offenses.

At trial, C. Garcia did not testify, but his wife D., age 76, did. She described the events which occurred on the night their home was burglarized. She and her husband were in bed. She first noticed the intruder when he came in the bedroom and said he wanted money. She could not see the man's face because he had turned off the lights. The man said he had a pistol and a knife. When C. woke, the intruder beat him. The man then made D. engage in oral sex. She did not know or could not remember whether the man forced her to engage in sexual intercourse. The man would not leave until she gave him money, which she did, and he left. She could not identify her assailant.

Investigating officers testified that the man entered the Garcias' house through a window, but they were unable to lift any fingerprints. The officers found some shoe prints outside this window. Police collected blood and seminal fluid samples in the Garcia's bedroom.

After appellant's arrest, these evidentiary items were tested and compared with appellant's shoes and blood. The shoe print had the same general tread pattern as appellant's shoes, but no unique characteristics were shown. It is observed that the

seizure of appellant's shoes occurred about a year after the offense. The blood analysis showed that appellant's blood and the seminal stain each contained a common rare blood factor. The blood analysis and footprint comparisons were the only physical pieces of evidence linking appellant to the offenses against the Garcias.

To aid in proving that appellant was the person who committed the crimes against the Garcias, the State offered, and the trial court admitted, evidence of offenses which appellant committed against the Williams, another elderly couple who lived in the same general area of Edinburg.

F. Williams, age 78, testified that on January 27, 1990, he and his wife, B., were asleep in bed. They were awakened by an intruder who demanded money. The intruder hit Williams with something, causing a wound which required seven stitches. The intruder came in through a window; he unscrewed the light above the Williams' bed. B. Williams, age 76, testified that she was awakened when the intruder leaned over her and demanded money. B. was able to see the man's face from light coming into the bedroom from two street lights. After the man hit her husband, the man forced B. to perform oral sex. The man then raped her. When that was finished, the man threatened to kill B. if she did not give him money. She found her purse and gave him some money. B. identified appellant as the man who raped her.

■ The trial court admitted the evidence for the limited purposes of showing identity and appellant's intent. We now turn to whether the admission of the evidence was proper. *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990) (on rehearing), contains an exhaustive discussion of the law of evidence as it relates to the admission of extraneous acts. All relevant evidence is admissible, except where provided otherwise by the Rules of Criminal Evidence. Tex.R.Crim.Evid. 402; *Montgomery,* 810 S.W.2d at 386. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R.Crim.Evid. 401; *Montgomery,* 810

S.W.2d at 386. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Tex.R.Crim.Evid. 404(b). Such evidence may be admissible, however, if it has relevance *apart from* its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Id.; Montgomery,* 810 S.W.2d at 387. Therefore, a party may introduce such evidence where it logically serves to make "more probable or less probable" an elemental fact; where it serves to make "more probable or less probable" an evidentiary fact that inferentially leads to an elemental fact; or where it serves to make "more probable or less probable" defensive evidence that undermines an elemental fact. *Montgomery,* 810 S.W.2d at 387. Examples of permissible purposes to which evidence of other crimes, wrongs or acts may be put are proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Tex. R.Crim.Evid. 404(b); *Montgomery,* 810 S.W.2d at 387.

■ Whether objected-to evidence of other crimes, wrongs, or acts has relevance apart from character conformity is a question for the trial court. *Montgomery,* 810 S.W.2d at 391. The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* An appellate court should not reverse the trial court whose ruling was within the zone of reasonable disagreement. *Id.* An appellate court should not make a *de novo* review of the record with a view of making a wholly independent judgment whether the probative value of the extraneous act is substantially outweighed by the danger of unfair prejudice. *Id.* at 392.

In the present case, the trial court admitted the extraneous offenses for the limited purposes of showing identity and intent. The jury was instructed to consider the evidence only for this limited purpose be-

fore and after the extraneous acts were introduced at trial, and these instructions were repeated in the jury charge. Without the extraneous offense evidence, the State's identification evidence would have been slim at best. Therefore, we cannot conclude that the trial court abused its discretion in admitting the evidence. Appellant's ninth point of error is overruled.

"INJURY-TO-AN-ELDERLY-PERSON"
ALLEGATIONS AND CHARGE

▆▆ In points of error one, two, thirteen, and sixteen, appellant complains about the injury-to-an-elderly statute and the trial court's charge which permitted the jury to convict him of this offense. *See* Tex.Penal Code Ann. § 22.04 (Vernon 1989).

Appellant challenged the statute through a motion to quash, contending that the statute violated the Texas and Federal Constitutions because it inadequately notified a citizen of the forbidden conduct. The infirmity, appellant argued, was that the statute lacked a necessary *mens rea* and therefore potentially punished innocent conduct.

At the time relevant to this case, the injury-to-an-elderly-person statute provided that a person committed an offense if he intentionally or knowingly engaged in conduct that caused serious bodily injury to an individual who was sixty-five years of age or older.[4] Appellant argued that, as written, the statute did not require the actor to intend the result of his conduct, and therefore the actor could intentionally perform some act without intending the result and be held strictly liable for the result of the innocent act. We disagree with appellant's argument.

Twelve years ago, the Court of Criminal Appeals addressed the same argument in *Beggs v. State*, 597 S.W.2d 375, 376–77 (Tex.Crim.App.1980). The Court discussed the origin of § 22.04 and noted that the unique phraseology of the section was a carryover from the former Penal Code. Attributing the phraseology to its historical origin, the Court held that an allegation that the defendant "did intentionally and knowingly engage in conduct that caused serious bodily injury" was an allegation "(1) that it was [the defendant's] conscious objective or desire to cause serious bodily injury and (2) that [the defendant] was aware that her conduct was reasonably certain to cause serious bodily injury." *Beggs*, 597 S.W.2d at 377. Adhering to *Beggs*, we find that the allegation that appellant "intentionally and knowingly engage[d] in conduct that caused serious bodily injury to C. Garcia" supplied the essential *mens rea* allegation which appellant claimed was missing. Thus, the indictment alleged that appellant intended, or knew, the result of his act. *See Brown v. State*, 725 S.W.2d 801, 809 (Tex.App.—Austin 1987), *vacated on other grounds*, 761 S.W.2d 4 (Tex.Crim. App.1988), *aff'd on remand*, 764 S.W.2d 931 (Tex.App.—Austin 1989), *aff'd*, 798 S.W.2d 284 (Tex.Crim.App.1990). We find that the indictment properly alleged the offense and overrule points one and two.

In points thirteen and sixteen, appellant asserts that the charge failed to include the proper *mens rea* for the offense and therefore failed to justify a conviction. We disagree. The court's charge tracked the indictment's allegations but defined the necessary mental states in terms relating to the result of conduct. By so defining the mental states, the charge required the jury to find that appellant intended, or knew, the result of his conduct, and thus it prevented the jury from convicting appellant for conduct which was not criminal. *Cf. Alvarado v. State*, 704 S.W.2d 36, 37–40 (Tex.Crim.App.1986). Points thirteen and sixteen are overruled.

SEXUAL ASSAULT ALLEGATIONS,
CHARGE, AND EVIDENCE

▆▆ In his third point of error, appellant contends that the trial court erred in failing to quash the sexual assault count of the indictment by refusing to require the State to allege what "acts and words" it would rely on to prove that appellant placed the victim in fear. The indictment alleged that appellant sexually assaulted

---

4. An amendment to the statute in 1991 omitted the phraseology underlying appellant's complaint. *See* Tex.Penal Code Ann. § 22.04 (Vernon Supp.1992).

the victim and alleged as an aggravating element that appellant "intentionally and knowingly, by acts and words, placed the victim in fear ..." Appellant contends that he could not adequately defend himself without knowing the acts and words the State would use against him. We disagree.

In *Brem v. State*, 571 S.W.2d 314, 317 (Tex.Crim.App.1978), the Court held that allegations of "force" and "threats" were sufficient to place the defendant on notice and that no further factual allegations were necessary. We followed *Brem* in *Quevedo v. State*, 661 S.W.2d 321, 323 (Tex.App.—Corpus Christi 1983, pet. ref'd). We held that a rape indictment need not allege the character of the force or specify the substance of the threats. *Id.* Although both of these cases concerned the former rape statute, their logic remains valid. Appellant was notified that his acts and words placed the victim in fear of death or serious bodily injury. No further specific allegation was required. Appellant's third point is overruled.

■ In point four, appellant attacks the sexual assault conviction, contending that the trial court erred in allowing, over his objection, an expert medical witness to render an opinion on D.'s credibility. To resolve this point, we must review portions of the victim's and medical expert's testimony.

To prove aggravated sexual assault, the State had to establish that appellant engaged in sexual intercourse with D. When the prosecutor asked D. if she had sexual intercourse with the intruder, D. responded that she did not, that she did not know, and that she did not remember.

Without the alleged victim's direct testimony to establish penetration, the State necessarily had to establish this element circumstantially, and the State called Dr. Jorge Martinez to testify. Martinez was working at the emergency room of Edinburg General Hospital on the night of March 2, 1989. He testified that D. came into the hospital confused and dazed. She said that she had been raped, and Martinez performed a rape examination. Martinez found seminal fluid in D.'s vagina. The testimony then turned to whether the semi-

nal fluid could have entered D.'s vagina without sexual intercourse. Martinez testified that it could have. After further testimony, the prosecutor asked the doctor the following question:

Now, based on your—first your human experience, okay, take that into consideration. Take into consideration your medical training as a medical doctor licensed to practice law in the State of Texas. Based on your visual examination of Mrs. Garcia, based on your physical examination of Mrs. Garcia, based on the internal examination of the contents of her vagina that you did with the preparation of slides there in the emergency room and later you observed through a microscope in the laboratory, based on the things that she told you, okay, can you tell this Court and this jury whether or not you have an opinion as to whether or not Mrs. Garcia had sexual intercourse with an individual that sent her to the emergency room through his actions?

Appellant immediately objected that the question (1) sought to bolster D.'s testimony, (2) attempted to add credibility to D.'s hearsay statements, and (3) was improper in asking about the individual who sent her to the hospital. In response, the prosecutor withdrew the final portion of the question about the individual that sent her to the emergency room. The trial court then overruled the objection and allowed the doctor to answer. Martinez answered that he believed D. had recent sexual intercourse.

Appellant now asserts that the trial court erred in permitting Martinez to render an opinion on the credibility of the victim over his objection. Appellant's point presumes that the question sought Martinez' opinion on D.'s credibility. We do not read the State's question as asking for an opinion on that subject, nor do we read the doctor's answer as giving an opinion on D.'s credibility. The doctor was asked his opinion on whether D. had sexual intercourse, not whether she was credible.

We admit that Martinez' answer may have indirectly impeached D.'s trial testimony and enhanced the believability of her

"I-was-raped" statement made to Martinez in the emergency room. The issue, thus, is whether the trial court should not have permitted the question because it permitted Martinez to testify indirectly about D.'s credibility. We find that the Court of Criminal Appeals has already decided this issue adversely to appellant's position. In *Duckett v. State,* 797 S.W.2d 906, 915 (Tex. Crim.App.1990), the Court held that expert testimony is not inadmissible merely because it might indirectly comment upon another witness' credibility. Applying the same logic here, we find that the trial court did not err in permitting the medical expert to testify about a medical issue. As the question was not one directly asking the doctor to address D.'s credibility, we find no error in the trial court's overruling of appellant's objection. Appellant's fourth point is overruled.

■ In points ten and eleven, appellant contends that the evidence is insufficient to establish, with regard to the aggravated sexual assault offense, that the victim was placed in fear of serious bodily injury or death by appellant's words or acts. In point fourteen, appellant alleges the trial court erred in charging the jury that it could consider appellant's words in determining whether appellant threatened to cause serious bodily injury or death. Appellant contends that the State failed to prove words of this nature and that the victim never testified to submitting to sexual intercourse because of threats made by the defendant. Appellant relies on the proposition that the victim must be compelled to submit by threats of bodily injury or death to be imminently inflicted. *See Rucker v. State,* 599 S.W.2d 581, 584–86 (Tex.Crim.App.1980). *Rucker,* and two other cases appellant cites, addressed the State's burden of proof under a former version of the aggravated rape statute. When *Rucker* was decided, the law provided that rape was aggravated if the defendant compelled submission to the rape by threat of death, serious bodily injury or kidnapping to be imminently inflicted on anyone. *Rucker,* 599 S.W.2d at 585. After *Rucker,* the Legislature amended the rape statutes, effectively overruling *Rucker. See Lindsey v. State,* 760 S.W.2d 649,

651 (Tex.Crim.App.1988); *Holder v. State,* 643 S.W.2d 718, 722 (Tex.Crim.App.1983); *Dodson v. State,* 699 S.W.2d 251, 253–54 (Tex.App.—Tyler 1985, no pet.); *Elkins v. State,* 681 S.W.2d 890, 892 (Tex.App.—Fort Worth 1984, no pet.).

Our current statute provides that sexual assault is aggravated if the defendant "by acts or words places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person." Tex.Penal Code Ann. § 22.021(a)(2)(A)(iii) (Vernon 1898).

■ Pursuant to § 22.021 a jury may consider both the actions and words of a defendant and infer from the totality of the circumstances that the defendant's overall conduct placed the victim in fear of death or serious bodily injury. *Alvarez v. State,* 767 S.W.2d 253, 258 (Tex.App.—Corpus Christi 1989, pet. ref'd).

Here, appellant demanded money, told the victim he had a gun and a knife, beat her husband, and forced her to engage in sexual acts. The victim testified that she was in fear of her life. From this evidence, a rational juror could conclude that appellant's words and acts contributed to the victim's fear that death or serious bodily injury would be inflicted on her or her husband. Appellant's tenth and eleventh points are overruled. We find no error in the trial court's permitting the jury to consider appellant's words and conduct to determine whether appellant had placed the victim in fear that death or serious bodily injury would be imminently inflicted on the victim. Appellant's statement that he had a gun and a knife provide sufficient evidence to support this charge. Appellant's tenth, eleventh, and fourteenth points of error are overruled.

### PHOTOGRAPHIC EVIDENCE

■ In point five, appellant contends that the trial court erred in admitting a photograph of F. Williams. The photograph shows Williams on the night his home was burglarized, after being treated, with a patch on his head. The photograph is neither gruesome nor inherently inflammatory. Under Tex.R.Crim.Evid. 403, rele-

vant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Long v. State*, 823 S.W.2d 259, 271 (Tex.Crim.App.1991). We conclude that the probative value was not substantially outweighed by any prejudice. The trial court did not err in admitting the exhibit. *See Long*, 823 S.W.2d at 273; *Ramirez v. State*, 815 S.W.2d 636, 646–47 (Tex.Crim.App.1991). Appellant's fifth point is overruled.

### SUFFICIENCY OF THE EVIDENCE TO SHOW ROBBERY

In point twelve, appellant contends that the evidence is insufficient to prove robbery as it was alleged in the indictment. We agree. The indictment alleged that appellant

> did then and there intentionally and knowingly, while in the course of committing theft of property from [D.], and with intent to obtain and maintain control of said property, threaten and place the victim in fear of imminent bodily injury and death, *by telling the said victim he would kill her.* (emphasis ours).

The trial court's jury charge tracked the language of the indictment and, to return a guilty verdict, the jury had to find that appellant threatened or placed the victim in fear of imminent bodily injury or death, *by telling D. he would kill her.* Appellant contends that the evidence is insufficient to establish that appellant told D. he would kill her.

It is well established that "there is no such thing as 'surplusage' in the part of the court's instructions to the jury which authorizes a conviction." *Ortega v. State*, 668 S.W.2d 701, 705 n. 10 (Tex.Crim.App. 1983); *see Arceneaux v. State*, 803 S.W.2d 267 (Tex.Crim.App.1990); *Polk v. State*, 749 S.W.2d 813 (Tex.Crim.App.1988); *Dunn v. State*, 721 S.W.2d 325 (Tex.Crim. App.1986); *Boozer v. State*, 717 S.W.2d 608 (Tex.Crim.App.1984). The State must introduce evidence to establish every fact necessary to conviction under the charge, even if the charge includes requirements which the statutory definition of a crime or the indictment did not. *See Warren v. State*, 810 S.W.2d 202 (Tex.Crim.App.1991); *Nickerson v. State*, 782 S.W.2d 887 (Tex. Crim.App.1990); *Williams v. State*, 696 S.W.2d 896 (Tex.Crim.App.1985).

The State, having alleged that appellant told the victim he would kill her, was bound to introduce evidence to support the allegation. The rule that excess matters alleged must be proved is still viable and must be followed, although the rule has been criticized. *See Benson v. State*, 661 S.W.2d 708, 717–20 (Tex.Crim.App. 1983) (McCormick, J., dissenting); *Blevins v. State*, 672 S.W.2d 828, 832–839 (Tex. App.—Corpus Christi 1984, no pet.) (Nye, C.J., concurring); *Casares v. State*, 703 S.W.2d 246, 247–48 (Tex.App.—Corpus Christi 1985, pet. ref'd) (Nye, C.J., concurring). Accordingly, we must determine if there is evidence to show that appellant threatened his victim "by telling the said victim he would kill her."

The evidence shows that after appellant woke D., he stated that he had a gun and a knife. He beat C. Appellant never orally told D. that he would kill her. The State argues, however, that by his acts and words, appellant conveyed a threat to kill to the victim "particularly when one keeps in mind the obvious fact that one can and often does tell someone something by nonverbal means." We disagree. The Random House Dictionary, 1968, defines the word "tell" as:

> 1. to give an account or narrative of; narrate, relate. 2. to make known by speech or writing; communicate. 3. to announce or proclaim. 4. to utter. 5. to express in words. 6. to reveal or divulge. 7. to discern or distinguish. 8. to bid or command. 9. to give an account or report. 10. to give evidence or be an indication. 11. to disclose something secret or private; tattle. 12. to determine or predict. 13. to produce a marked or severe effect.

Webster's New Twentieth Century Dictionary, 2nd Ed.1979, defines the word "tell" as:

> 1. to enumerate; to count; to reckon. 2. to relate in order; to narrate; to re-

count. 3. to express in spoken or written words; to utter. 4. to report; announce; publish. 5. reveal; disclose; make known. 6. to solve; to explain, to interpret. 7. to recognize; distinguish; discriminate. 8. to decide; know. 9. to give instruction to; to make acquainted with; to inform. 10. to give an order, command or request. 11. to declare or inform with emphasis; to assert positively; to assure. 12. to set store by; to make account of; to regard.

These definitions indicate that the word "tell" requires oral or written communication. Thus, the allegation that appellant "told" the victim he would kill her must be supported by evidence that appellant orally or in writing expressed that he would kill her.

The evidence reveals no written communication. Appellant orally stated that he had a knife and a gun. Those words were sufficient to communicate a death threat. The State, however, went beyond merely alleging that appellant threatened the victim with death. It specifically alleged that appellant told the victim that he would kill her. Appellant never *told* D. he would kill her. He only *told* D. he had a knife and a gun. Thus, the State's proof does not establish the allegation, and we sustain appellant's twelfth point of error. Finding the evidence insufficient to prove robbery as alleged and submitted to the jury in the charge, we order appellant acquitted of robbery.

### BURGLARY CHARGE

■ In point fifteen, appellant contends that the court erred in not instructing the jury that they had to determine unanimously the type of intent appellant had when he entered the habitation. The indictment alleged, in separate paragraphs, that appellant entered the Garcias' habitation with the intent to commit sexual assault, the intent to commit theft from D., and the intent to commit theft from C. The trial court submitted the case to the jury with the three intents but did not require that the jurors agree on the intent to return a guilty verdict. Appellant argues that it was improper for the trial court to permit conviction without unanimous agreement.

Both the United States Supreme Court and the Court of Criminal Appeals recently held that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Schad v. Arizona,* — U.S. —, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991). The law requires a unanimous verdict. Tex.Code Crim.Proc. Ann. art. 36.29 (Vernon Supp.1992); *Kitchens,* 823 S.W.2d at 258. The law does not require that members of the jury unanimously agree upon the facts supporting the verdict. Appellant's fifteenth point of error is overruled.

### INJURY TO AN ELDERLY CHARGE

■ In point seventeen, appellant contends, with regard to the jury charge on the law of injury to an elderly person, that the trial court erred in not submitting the following requested instruction:

Our law provides that a person is criminally responsible, if the result would not have occurred, but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

So that unless you find from the evidence beyond a reasonable doubt that the serious bodily injury, if any, to C. Garcia was caused as that term is herein defined, by the Defendant Manuel Vela Contreras striking him with his hand, you will find the Defendant not guilty, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

Appellant argued that a portion of C.'s injuries were attributable to his Parkinson's disease and therefore the trial court should have given this instruction. The trial court gave no instruction on concurrent causation.

Tex.Penal Code Ann. § 6.04(a) (Vernon Supp.1992) provides:

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless

the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

Under § 6.04, a person is criminally liable if his conduct, regardless of a concurrent cause, caused the harm or if his conduct, together with another cause, caused the harm. *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App.1986). Only when the person's conduct, by itself, is clearly insufficient to cause the harm may he not be convicted. *Id.* Cases interpreting this Penal Code section hold that a charge on concurrent causation is not required when the defendant's conduct was sufficient to produce the result. *See Daniel v. State,* 577 S.W.2d 231, 235–236 (Tex.Crim.App. 1979); *More v. State,* 692 S.W.2d 912, 920–21 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Stated conversely, a concurrent charge is not required when the evidence does not show that the defendant's conduct was clearly insufficient to cause the result. We find no such evidence in this case. Appellant relies on testimony showing that C.'s injuries may have been exacerbated by Parkinson's disease. That testimony, however, does not show that appellant's conduct was insufficient to cause the result. Point seventeen is overruled.

### JURY ARGUMENT

 In points eighteen through twenty-three, appellant alleges that various portions of the prosecutor's closing jury argument constituted reversible error. Appellant complains about the following argument:

Can you conceive, can you compare the terror faced by people afraid when they're testifying versus the terror faced by Mrs. Garcia and Mrs. Williams? There is no comparison. And I hope that nobody ever gets through that again. But I know as long as people like Manuel Contreras are around I know people will be put through that.

Appellant objected that the prosecutor was injecting his person opinion. "It is well settled that the prosecutor may argue his opinions concerning issues in a case so long as the opinions are based on the evidence in the record." *Barnard v. State,* 730 S.W.2d 703, 718 (Tex.Crim.App.1987).

This argument appears based on the prosecutor's conclusion that appellant was responsible for the crimes against the Garcias and Williams, which was a reasonable deduction from the evidence produced at trial. The portion of the argument which states that people will be put through terror as long as people like appellant are around is nothing more than a proper plea for law enforcement. We find no error in the argument.

Appellant next complains that the prosecutor improperly argued when he stated:

Doctor Martinez told you that Mrs. Garcia told him that she had been raped. When? On the night that it happened? Why would he take an oral swab? Why would he take a vaginal swab? Why would he penetrate the private parts of any patient that the hospital received and risk a lawsuit? Why? He wouldn't have done that unless the patient told him so. This is what happened to me—

Appellant objected that the prosecutor was giving his personal opinion to give credibility to the doctor's testimony. We disagree. "This is what happened to me" appears to refer to what D. Garcia was telling the doctor about what happened to her. We find no reference to the prosecutor's personal opinion.

 Appellant also complains of the following argument:

If I had eyewitnesses to the Garcia perpetrated attack they would be here before you. Mrs. Garcia came to testify to the best that she could. If you think that I'm going to get people to testify according to how I want the evidence to be, if you feel that's my job or that the police department is going to go out there and fabricate evidence by way of fingerprints and otherwise, then your duty is clear to acquit the Defendant. But let me tell you, ladies and gentlemen, we have taken painstaking time to do the best we could and I believe that Edinburg—that their police department did an incredible job on their investigation.

Appellant objected that the prosecutor was stating his personal opinion. The trial

court overruled the objection but instructed the jury to disregard the personal opinion "of the lawyer on either side. You be the judge of what the facts are."

We find that any error in the prosecutor's statement was removed by the trial court's instruction. We also find any error harmless beyond a reasonable doubt. Tex. R.App.P. 81(b)(2). The off-handed comment that the police investigation was "incredible," while irrelevant to the issues of the case, did not contribute in any way to the conviction.

■ Appellant next complains of the argument:

There was a sexual assault on Mrs. Garcia. He threatened to kill her. She testified to that. She said—

Appellant objected that the statement was outside the record because there was no evidence that appellant threatened to kill her. We have found above, of course, that while appellant never "told" D. that he would kill her, he did threaten to kill her. The argument was a proper summation of the evidence.

■ Appellant next complains of this argument:

Now let me tell you in reference to burglary of habitation the evidence shows the intent was sexual assault coupled with intent to commit theft. Why? Because this Defendant had the ample opportunity when he was dealing with folks that grew up in his mama's neighborhood—his grandmother's neighborhood. That all he had to do was go in there, who did not hear him, and just cart off the personal belongings and go sell them for whatever.

Appellant objected that the prosecutor was raising extraneous offenses that were outside the record. Evidence was admitted at trial to show that appellant was familiar with the neighborhood because his grandmother lived about a block and a half from the Garcia residence. As we understand it, the prosecutor's argument was that appellant's intent in burglarizing the Garcias' house was not just to "cart off the personal belongings" because, if that had been his only intent, he could have done that without assaulting D. and C. The argument

was a reasonable deduction from the evidence. It did not refer to any extraneous offenses.

■ Finally, appellant complains of this argument:

The question is identity and it has been identity from the beginning and don't be misled. Look at the evidence. The Williams crime, which is brought in for your consideration, was brought for the main issue of identity and intent as to the sexual assault. That signature crime of Williams is like the Defendant had placed his signature there, Manuel Contreras, through what he did.

Appellant objected that the prosecutor was exceeding the purpose for which the extraneous offense evidence was admitted by using the evidence "to reach the issue of propensity." We disagree. The prosecutor's reference to "signature crime" and identity clearly show that the prosecutor was asking the jury to consider the extraneous offenses solely for the purposes they were admitted. The argument was proper. Points eighteen through twenty-three are overruled.

The trial court's judgments in the burglary, sexual assault, and injury to an elderly person are affirmed. The trial court's judgment in the robbery is reversed, and appellant is ordered acquitted.

Concurring and Dissenting Opinion by NYE, C.J.

Concurring Opinion in Cause No. 13–90–408–CR by GILBERTO HINOJOSA, J.

NYE, Chief Justice, concurring and dissenting.

The majority affirms appellant's convictions for injury to an elderly individual, aggravated sexual assault and burglary, but it orders appellant acquitted of the robbery. I agree that the first three convictions should be affirmed, but I dissent to reversing the robbery conviction, cause number 13–90–407–CR.

The robbery indictment alleged that appellant threatened and placed the victim in fear of imminent bodily injury and death

"by telling the said victim he would kill her." The majority concedes that the evidence is sufficient to show that appellant threatened the victim with death, but it then holds that the evidence is insufficient to show that he told the victim he would kill her. The majority reasons that the word "tell" implies oral or written communication. It then goes on to find that the appellant is entitled to an acquittal because appellant never explicitly "told" the victim he would kill her. It is ludicrous to acquit the appellant on this ground. I would affirm the conviction.

The majority's holding is based on what it perceives as a variance between the proof and the indictment. Almost a decade ago, I urged the Court of Criminal Appeals and the State Legislature to address the rules of law which require an appellate court to acquit defendants when surplusage in the indictment has not been proved, even though the evidence clearly establishes all the essential elements of the offense. *See Blevins v. State*, 672 S.W.2d 828, 832–839 (Tex.App.—Corpus Christi 1984, no pet.) (Nye, C.J., dissenting). In *Blevins*, this Court acquitted a defendant when the State failed to prove the particular deer in question had a white tail. *Blevins*, 672 S.W.2d at 830. Later, in *Casares v. State*, 703 S.W.2d 246, 247–48 (Tex.App.—Corpus Christi 1985, pet. ref'd), this Court acquitted a defendant when the State failed to prove that he broke a door *with his shoulder. See Casares*, 703 S.W.2d at 248–250 (Nye, C.J., concurring). Today, I dissent because the majority does not need to interpret the word "tell" so narrowly that appellant must be acquitted.

"Tell" is synonymous with "communicate." There is no question that appellant communicated a threat to kill the victim through his words and brutal actions. This evidence is sufficient to affirm the conviction. The majority, however, acquits appellant not because he did not commit robbery; not because he did not threaten to kill his victim; but because he did not use the explicit words, "I will kill you." I would not find that the indictment required this proof. *The evidence here is overwhelmingly sufficient to establish that appellant communicated the threat to his victim by not only his words, but by violent conduct.* The evidence shows that after the appellant woke the elderly man and his wife, he severely beat the husband, inflicting a wound to the head that required many stitches to repair. He raped the elderly woman, forcing her to commit oral sex and told them that he had a gun and a knife. Although the appellant never orally told the wife he would kill her, his acts and words conveyed a threat that was equally as meaningful as if he had spoken the majority's magic words. The State introduced evidence to establish every essential element of robbery. Appellant's conduct violated the Penal Code. The State proved the violation, and the jury found appellant "guilty."

The majority invokes the "prohibition against variance rule" and then narrowly interprets the term "tell" to acquit a guilty defendant. This holding exemplifies injustice. It permits a guilty defendant to go free although the State proved every essential element of the offense. Two elderly persons, victims of a merciless crime, are now denied justice by the majority's application of a technical rule that is useless and unnecessary in today's society. In *Casares* and *Blevins*, I wrote at length about the rationale of the Texas "variance rule" and noted that strict application was not required. It is not necessary to repeat everything that was stated in those opinions.

I believe the majority's narrow holding if it becomes law, will ultimately prove unfair to criminal defendants who desire the State's allegations to go beyond the statutory minimum. The majority's holding is surely unfair to the victim of this senseless crime and to the community where the crime was committed. It produces an absurd result. It has gone too far. Today, we have decided a case which is unjust to the victims of crime and unjust to the citizens accused of crime. We could not have reached a worse decision. I urge the Court of Criminal Appeals to examine this problem and the State Legislature to act to cure these injustices.

GILBERTO HINOJOSA, Justice, concurring.

I agree with the majority opinion in all respects. I write separately, however, to address certain conclusions made in the dissent regarding the majority's reasoning for its decision and its effect upon criminal jurisprudence in this State.

The dissent asserts that the majority's holding will act as an injustice to both criminal defendants and victims by encouraging the state to make more general allegations in an indictment[1] and by depriving victims of their day in court even though the "appellant's conduct violated the Penal Code." The dissent, however, acknowledges that "the rules of law ... require an appellate court to acquit defendants when surplusage in the indictment has not been proven, even though the evidence clearly establishes all the essential elements of the offense." The dissent further affirms the fundamental principle that "we are bound to follow the law set out by the Court of Criminal Appeals." Yet, not withstanding the obvious failure of the state to prove the allegations contained in the indictment, the dissent concludes that "[w]e could not have reached a worse decision" and then goes on to urge "the Court of Criminal Appeals and the State Legislature to act to cure these injustices."

It is fundamental that intermediate appellate courts are courts of law. We are bound to interpret the law as enacted by the legislature or developed by the higher courts. Although individual justices may have biases and prejudices about how the law affects parties and non-parties within our jurisdiction, our oath requires us to set aside such biases and prejudices and interpret the law.[2] Our duty is to follow and apply the law to the parties in this case, regardless of their character or how it might effect non-parties in our State.

For example, it would offend anyone's basic sense of justice to acquit a criminal defendant who is found to have committed a heinous criminal act simply because the evidence establishing guilt was obtained through an illegal search. However, the law holds that illegally obtained evidence is inadmissible, regardless of its tendency to connect the criminal defendant to the offense charged. We are duty bound to follow such laws even if it results in the acquittal of an obviously guilty criminal defendant.

The same holds true here. As stated above, the dissent agrees that the Law in Texas is that all aspects of the indictment must be proven by the state regardless of whether those elements are surplusage. Here, the State failed to offer proof that the criminal defendant verbally threatened to kill the victim. That variance requires us to reverse the trial court's finding of guilt and to acquit the defendant, regardless of how we feel about the result obtained. As with most other citizens in this state, we are concerned about the victims of crime. However, disregarding well settled law, simply because of these concerns, would be the greater injustice. If well settled law is wrong or unjust, then it is the duty of the legislature and the higher courts to change it, not intermediate appellate courts.

Accordingly, I join the majority in reversing the defendant's conviction for robbery.

---

1. The dissent's premise is incorrect. The State has a wide degree of latitude in deciding how specific it wishes make a particular indictment. The rule is that it must prove the facts so alleged. The dissent's proposed rule would eliminate this requirement and permit the state to plead many facts, and merely prove the "bare bones" elements of the crime charged. This would render the indictment virtually worthless in its important function of providing the defendant specific notice of the crime alleged, thereby depriving a criminal defendant of his right to prepare an adequate defense to the charge brought against him by the State.

2. It would be contradictory for the trial courts to charge a jury: "Do not let bias, prejudice, or sympathy play any part in your deliberations," if the Justices on this court refuse to abide by the same standard.